## BROWN *v.* THE STATE.

1. An extraordinary motion to set aside a verdict on the ground that one of the jurors was not a resident of the county at the time of the trial raises an objection propter defectum, and arises too late after the verdict, though the movant did not know the fact alleged until after the verdict. Were the rule otherwise, this court will not reverse the judgment of the court below when it appears from the counter-showing made by the State at the time of hearing the motion, that there was sufficient evidence to authorize the judge to conclude that the facts alleged in the motion were not true.

2. This court can not consider a ground in a motion for a new trial alleging error on the part of the court below in admitting certain testimony, it not appearing in the motion nor the bill of exceptions that any objection was ever made to the admission of such testimony.

3. On the trial of an issue made by a plea of not guilty, under an indictment for murder, whether the sheriff had previously had the jail guarded for fear the defendant might be lynched was immaterial, and the court did not err in excluding such testimony from the jury.

4. The charge of the court fully, fairly and correctly presented to the jury the law bearing upon the issue involved, and, in the light of the entire charge, there was no merit whatever in any of the exceptions taken to the portions thereof set forth in the motion for a new trial.

5. In the trial of a murder case the jury, should they find the defendant guilty, are vested with absolute power to recommend, or not, the defendant to life imprisonment, as they see proper, and a failure to recommend can under no circumstances authorize the court to set aside their verdict.

6. There was no error in overruling the ground in the motion based on newly discovered evidence, when it did not appear that either the defendant or his counsel did not know of the newly discovered testimony until after the verdict. Especially is this true when most of such newly discovered testimony was either immaterial or impeaching in its nature, and when all of it was met by rebutting affidavits presented by the State contradicting the affidavits of defendant used in support of his motion.

7. The evidence in this case was sufficient to sustain the verdict.

Submitted October 3, — Decided October 13, 1898.

Indictment for murder. Before Judge Falligant. Bryan superior court. May term, 1898.

*Gignilliat & Stubbs* and *P. W. Williams,* for plaintiff in error. *J. M. Terrell, attorney-general,* and *W. W. Osborne, solicitor-general,* contra.

LEWIS, J. The defendant was indicted for the murder of Thomas Benton, alleged to have occurred in Bryan county on April 25, 1898. A plea of not guilty was entered. The following facts, substantially and briefly stated, appear from the testimony in the case: Tom Benton, the deceased, was a white boy, sixteen years old, but small and delicate for his age. The defendant, a colored boy, was about the same age, but of larger stature. Early on the morning of the day above named, the deceased, by direction of his father, started on a trip from their home in a one-horse wagon to a station on the railroad some eight miles distant, in order to bring back some goods for the purpose of use in the country store owned by the father. The deceased was given money by the father to pay for these goods. He had proceeded but about three miles on his journey to the station when he was killed. The body was found late in the afternoon behind a log, a few feet from the roadside, where had stood his horse and wagon and dog all day. In a mortal wound in the neck was found sticking his own knife. There were bruises on the body, and signs of a scuffle on the adjacent ground. The defendant was seen in company with the deceased at or near the spot where the body was found. Defendant had also in charge a wagon drawn by a mule. When first seen he was sitting in the wagon with the deceased. When seen the second time, he was on the ground ostensibly mending some

portion of his harness, both teams being stopped in the road adjacent to where deceased was killed. No other person was found in company of the deceased after he left his home with the wagon. Two spots of blood were noticed upon the drawers of the defendant at the coroner's inquest. While the sheriff was removing the defendant for safe-keeping from the jail in Bryan county to Savannah, defendant stated that he would tell the sheriff something if he would not say anything about it until after they left the railroad-station which they were then approaching. This promise was given, and it appears that the sheriff complied with it. Defendant appeared distressed on account of his father being in jail charged with the same crime, and was weeping. He then confessed that he had killed deceased; that the deceased had started to run, and fell over a log, and he thereupon jumped on him and cut his throat with a knife. He stated that he secreted his pants and the money he took from the body of the deceased at a particular place, designating it, and that upon the pants would be found blood of the deceased. Upon a search of the place neither the pants nor the money was found, but evident signs were observed where something had been apparently hidden and afterwards removed. The jury returned a verdict of guilty, without recommendation. The defendant moved for a new trial, and upon his motion being overruled he excepted. He afterwards also filed an extraordinary motion for a new trial, upon the ground that one of the jurors was not a resident of Bryan county, but a resident of Chatham county, at the time of the trial, and that he did not know this fact until after the verdict. This motion was also overruled by the court, and the defendant excepted. We will consider both cases in this opinion.

1. The proposition announced in the first sentence of this headnote has been so frequently decided by this court that any further discussion of the same is entirely unnecessary. *Costly* v. *State,* 19 *Ga.* 628; *Gormley* v. *Laramore,* 40 *Ga.* 253; *Meeks* v. *State,* 57 *Ga.* 329; *Hill* v. *State,* 64 *Ga.* 453; *Henderson* v. *Fox,* 83 *Ga.* 234. But even if this ground of exception to this juror had been made in time, there would have been no error in overruling the same, under the facts of this record.

The question of the qualification or competency of a juror is one exclusively for the court. The State presented a counter-showing, by an affidavit of the juror himself, to the effect that in point of fact he was at the time of the trial a resident of Bryan county; and the circumstances to which he swore showing his residence were sufficient to authorize the judge to conclude that he was competent to serve in the case. In case of a conflict of evidence on such a question, this court will not interfere with the free exercise of the judgment of the trial judge in passing upon this issue of fact.

2. The following grounds appear in the motion for a new trial: "The court erred in permitting the alleged confession to go to the jury." "The court erred in permitting the witness W. G. Sutton to testify that he saw blood upon the drawers of the defendant." It nowhere appears from the motion that any objection was made to the admission of the testimony referred to in either of these grounds. Even if this fact appeared, we do not think, under the facts appearing in the brief of evidence, that the confession should have been excluded from the jury. There was no testimony whatever that it was induced by another through any hope of reward or fear of punishment. The testimony that blood was seen upon the drawers of the defendant was certainly pertinent; and the garment itself at the time of the trial could not have been the highest evidence of how it appeared previously and immediately after the killing.

3. There was no motion in this case for a change of venue, or for a continuance on the ground of the excited state of the public mind, and the danger the defendant was in from lynching. Without making any such motion the defendant's counsel announced ready, and went to trial on the merits of the case. As to whether or not the sheriff had kept the jail guarded as a matter of precaution and for the safety of the defendant, certainly throws no light upon his guilt or innocence.

4. Objection was made in the motion to that portion of the charge in which the court stated to the jury as follows: "Your object is to obtain the truth, to determine who committed the crime, and when you have obtained the truth and are satisfied to a conviction beyond a reasonable doubt, march up to your ver-

dict with the same impartiality, and do your duty." In the same connection, and just previous to this sentence, the court had cautioned the jury particularly that the law knows no creed or condition, no color, no nationality, and they were in effect instructed that every defendant, whether he be rich or poor, high or low, should be tried with perfect impartiality. We can see no possible objection to an instruction by the court which in effect simply enjoins perfect impartiality between the State and the accused.

Objection was further taken to the charge of the court as follows: " You are judges of the law and the facts in this wise: You take the facts from the witness-stand, the law as given you in charge by the court, apply the law to the facts, make up your verdict, and thus become judges of the law and the facts." The meaning of this was simply to charge substantially what this court has ruled as law upon the subject so often that it is unnecessary even to cite decisions.

5. Another ground in the motion for new trial is that " the verdict is contrary to law and evidence, in that the jury should have recommended the defendant to mercy." We can not conceive of a case in which it can be said, as matter of law, that the jury might abuse their discretion by failing to recommend to mercy a convicted criminal. The power of a jury in a capital case to fix life imprisonment as the punishment, or to refuse to do so, is absolute, and can not be controlled or interfered with by the courts. In such a matter the arm of this court is rendered absolutely powerless by the law; and, regardless of what the individual views of any member of this bench might be upon the subject of capital punishment in any particular case, we do not think it would be proper even to suggest, intimate or advise in our adjudication whether the death penalty or life imprisonment should be inflicted. The law has constituted another tribunal to pass upon this momentous issue, and we have no disposition to invade its prerogative.

6. It does not appear from the record that the alleged newly discovered evidence was unknown either to the defendant or his counsel until after the trial, and hence there is an utter want of showing such diligence as would authorize the court to consider

it as a ground for setting aside the verdict. The defendant's father made affidavit that he had used due diligence in ascertaining facts before the trial, and did not know of the newly discovered evidence until after the trial, but no such affidavit or even statement appears from the defendant himself or his counsel. Even if the defendant was of such tender age that the law would not charge him with any diligence in such matters, nevertheless his counsel's negligence would be imputed to him. This being a capital case, however, we have not paused here in the investigation of this question, but have carefully gone over the entire record; and we are less reluctant in rendering a decision sustaining the judge in overruling this ground of the motion, because it appears by counter-showing, made by the State, that the facts relied on as newly discovered evidence were sufficiently rebutted; and besides, they were mainly immaterial and impeaching in their nature.

7. It was earnestly insisted by plaintiff in error that the judgment below should be reversed and a new trial granted because the verdict was contrary to the evidence. We think that the brief statement of the facts given in the first part of this opinion is itself an answer to this contention. A confession of guilt, when corroborated, will sustain a verdict of guilty. The confession in this case was not only corroborated by proof of the corpus delicti, but was further corroborated by proof of the fact that the killing occurred in the manner and at the place indicated by the defendant in his confession. He stated that the deceased was overtaken by him after he had fallen over the log. Behind this identical log the body was found. He stated further that the purpose of the murder was to steal the money on the person of the deceased. The proof showed the money was absent from the body when found. He stated that blood was to be found upon his pants. The pants were not recovered, but blood was found upon the drawers, which had evidently permeated the pants. He stated that the pants and money would be found at a designated place. While not found there the place gave every appearance that something had been concealed there and afterwards removed. It was certainly, to say the least of it, a plausible theory in this case, that during the

conversation between the defendant and the deceased in the wagon, the former had ascertained that the latter had money upon his person, and that afterwards he borrowed of the deceased a knife, ostensibly for the purpose of fixing his harness, but really for the purpose of assassinating the deceased, and when the deceased was assaulted he fled, and was overtaken and killed, after having fallen over a log, as stated in the confession. All confessions should be scanned with great caution and care, and we think this rule should be particularly invoked and given in charge to the jury when a confession is made, however voluntary, by one of tender age while under arrest and in distress. This caution the judge emphasized in his charge, and we do not see how he could well have been more particular in his warnings to the jury upon the subject of accepting as the truth the confession of the defendant.

There being, therefore, no rule of law violated, and the verdict being supported by the evidence, we will not interfere with the discretion of the trial judge in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concurring.*