## Davis v. Commonwealth.

(Decided June 18, 1926.)

### Appeal from Fayette Circuit Court.

1. Jury.—Every one charged with a crime is entitled to a trial by a fair and impartial jury.

2. Criminal Law.—Rulings of trial court on challenges for cause, under Criminal Code of Practice, sections 209, 210, are entitled to great weight.

3. Criminal Law—Denial of New Trial Because Juror Heard Part of Testimony in Trial Involving Same Homicide Held Not Error, in View of Lack of Showing of Bias on Part of Juror, and that Defendant Virtually Pleaded Guilty (Criminal Code of Practice, Sections 209, 210).—Court held not to have erred in denying new trial in murder prosecution because juror, a few days before, had heard some fragmentary parts of testimony of one of state's chief witnesses in another trial involving same homicide, where no such state of mind on part of juror was shown as would have prevented him from giving defendant an impartial trial, for which reason court would have been justified in overruling a challenge for cause, under Criminal Code of Practice, sections 209, 210, and especially in view of defendant's virtual plea of guilty.

4. Criminal Law.—Right of appeal, in a criminal case, is purely statutory, and technical invasion of constitutional rights of defendant does not entitle him to a reversal, unless it prejudicially affects his rights.

RONALD C. OLDHAM for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Appellant, on his separate trial charged with murder, conspiracy to commit robbery resulting in murder, and aiding and abetting another in the murder of William Nelson Fant, was found guilty and sentenced to death. The charge grows out of the same transaction involved in the case of Brannon v. Commonwealth, this

day decided, and for a detailed statement of the facts that opinion is referred to.

The only essential difference in the facts of that case and this is that appellant took the stand as a witness, and not only admitted his presence at the time of the homicide, but gave in detail the facts and circumstances leading up to the transaction, and which beyond peradventure disclose a conspiracy by him and others to commit the robbery which resulted in the homicide. He likewise admits the essential facts at the time of the homicide showing he was aiding and abetting Brannon in the shooting by the latter. It is proper to say, however, that his evidence shows that when the proposed holdup or robbery was suggested to him by the other conspirators he hesitated to be a party to it, and that at other times during the progress of the conspiracy he had hesitated and expressed his unwillingness to participate therein, but that finally, upon assurance that there would be no resistance offered by any of the parties who might be present because of an understanding with one or more of the parties who were either operating the gambling room proposed to be robbed, or who would probably be participating in the game then in progress, he had finally acceded to the solicitation of the others and had actually participated in the robbery and was present at the homicide, as was his co-conspirator Brannon.

It is conceded by counsel that the trial proceeded without apparent prejudicial error, that the instructions were faultless, the indictment was sufficient, and that there was no error in the admission or rejection of evidence. But it is said that the trial court erred in its refusal upon the motion for a new trial to grant the same on account of an error in the selection of a juror, the facts being at the time unknown either to defendant or his counsel, or to the court, upon which the alleged error is predicated.

The ground for a new trial, which the trial court overruled and which is now relied upon as the sole ground for reversal, is that one of the jurors who was accepted by the parties and who acted as a member of the jury throughout the trial and was one of the jury returning the death verdict, was present in the courtroom during the trial of appellant's co-defendant Brannon, which trial was held only two or three days before appellant's trial, and there heard a part of the testimony of at least three witnesses, one of whom was an eye-witness to the homi-

cide introduced by the Commonwealth upon that and this trial.

The defendant on this question filed the affidavits of four persons, including that of the three counsel appointed in the lower court to defend him, and one Dr. Riley. The Riley affidavit discloses that during the trial of Brannon the juror Drury was present in the courtroom and heard the testimony of Sullivan the eye-witness and other witnesses introduced by the Commonwealth, and the affidavit of defendant's counsel says they had during the preliminary stages of the trial asked each and every juror thereafter selected to try the case whether he had discussed the facts of the case with any of the witnesses, to which inquiry each of the jurors answered in the negative, and that they had asked each and every juror selected whether he had heard any of the witnesses discuss the facts of the case, either with him or in his hearing, and they each answered in the negative, and that counsel in reliance upon the truthfulness of these answers agreed to the selection of the said jurors, and that at the time the final jury was selected defendant had at least four peremptory challenges left; that after the verdict defendant's counsel for the first time learned that one of the jurors there selected to try appellant's case was present in the courtroom during the Brannon trial when witnesses in that case were testifying, and that counsel did not know at any time before the return of the verdict in appellant's case that the juror Drury was present at or heard a part of the testimony in the Brannon case.

The Commonwealth filed the affidavit of the juror Drury and of the attorney for the Commonwealth and the county attorney. The affidavit of Drury says that he was present in the courtroom during a part of the Brannon trial; that during a night session of the court he was there and heard some of the testimony of Sullivan and the testimony of two policemen, but has no recollection of hearing the testimony of any other witness; that he only heard a small part of the testimony of Sullivan at a time when the witness was recalled to the witness stand and asked a few questions, and that the testimony so given, and heard by him, made no particular impression upon him and could not and did not influence him in any way when acting as a juror upon the trial of appellant. He further states that he was not asked on

his examination as a juror whether he had heard any of the witnesses testify or been present at the Brannon trial; that he was asked whether he had talked to any of the witnesses or conversed with them and truthfully answered he had not. He states that he had no desire to serve on the Davis jury, and if the question whether he had heard any of the testimony in the Brannon trial had been propounded to him he would have answered it truthfully; that the verdict returned, so far as he was concerned, was based wholly upon the law and testimony, and that affiant believed then and now feels that he was in such a frame of mind as to be able to try the case with fairness both to the defendant and to the Commonwealth. The counsel for the Commonwealth state in their affidavit that they represented the Commonwealth in the prosecution and that they had read the affidavit of counsel for defendant, and that they were each present throughout the trial of Davis, and that the attorneys representing defendant did not upon the trial, as stated in their affidavit, ask all of the jurors whether they had heard any of the witnesses discuss the facts of the case either with the juror or in his hearing, and they have a clear recollection that some of the jurors were not asked that question either in the form stated by defendant's counsel or in substance.

The trial court in an opinion overruled this and other grounds for a new trial, and in doing so found the facts to be as set forth by the attorneys for the Commonwealth, and stated that their version was in accord with the recollection of the judge. Incidentally, however, he paid a high tribute not only to the character of the three counsel appointed to defend appellant, but in addition said they had managed the defense with rare tact and wisdom.

It is fundamental that every one charged with crime is entitled to a trial by a fair and impartial jury, and our problem is to determine under the facts disclosed whether appellant has not had such trial, and therefore should have been granted a new trial.

Actual bias in a juror is defined in section 209 of our Criminal Code as follows:

"Actual bias is the existence of such a state of mind on the part of the juror, in regard to the case, or to either party, as satisfies the court, in the exercise of a sound discretion, that he cannot try the

case impartially and without prejudice to the substantial rights of the parties challenging.''

There is an amendment to that section passed in 1888 declaring that it shall not be a cause of challenge that a juror has read in a newspaper an account of the commission of the crime, if such juror shall state on oath that he believes he can render an impartial verdict according to the law and evidence; likewise that amendment provides that in the trial of any criminal cause the fact that a person called as juror has formed an opinion or impression, based upon rumor or newspaper statements, and about the truth of which he has expressed no opinion, shall not disqualify him to serve as a juror in such a case, if he upon oath shall state that he believes he can fairly and impartially render a verdict therein in accordance with the law and evidence, if the court be satisfied of the truth of such statement.

Clearly the amendment to the section was designed to greatly liberalize the pre-existing rules as to challenges for actual bias, and when the court upon the hearing below found as a fact, as he was justified in doing under the statements in Drury's affidavit, that his hearing of a part of the evidence on the Brannon trial had not made such an impression upon his mind as to disqualify him as an impartial juror upon the trial of appellant, his action was in harmony with the liberal rules so laid down in the amendment.

The affidavits did not disclose that Drury ever knew or heard of appellant until the Brannon trial, or that he could have had any prejudice or feeling concerning the case except such as every citizen might have acquired by casual information or the reading of newspapers. It is obvious, therefore, that there was no such state of mind on the part of the juror as would have prevented him from giving appellant a fair and impartial trial.

Likewise, section 210 of the Criminal Code provides for the challenge of a juror for implied bias if he be related by consanguinity or affinity, or stands in the relation of guardian and ward, attorney and client, master and servant, landlord and tenant, employer and employed on wages, or if he be a member of the family of defendant, or of the person alleged to be injured by the offense charged, or on whose complaint the prosecution was instituted. Or if he be adverse to defendant in a civil suit or has complained against or been accused by him in a

criminal prosecution, or if he has served on the grand jury which found the indictment, or on the coroner's jury which inquired into the death of the party whose death is the subject of the indictment, or if he has served on a trial jury which has tried another person for the offense charged in the indictment, or if he has been one of a former jury sworn to try the same indictment, and whose verdict was set aside, or who were discharged as a jury in a civil action brought against defendant for the act charged in the indictment, or if the offense be punishable with death, if he entertains such conscientious opinion as to preclude him from finding defendant guilty.

The only basis for the belief that the juror in question could not and did not give appellant a fair and impartial trial is the fact that he heard two or three days before some fragmentary parts of the evidence of one of the chief witnesses against appellant, in another trial involving the same homicide. There is no claim that the juror was related to any party involved in the homicide, or that he had either formed or expressed an opinion as to appellant's guilt or innocence, and if there had been disclosed upon the *voir dire* that he had heard a part of the evidence in the Brannon trial, and had at that time made the statement which he subsequently made in his affidavit that he could and would give to appellant a fair and impartial trial, the court would have been justified in overruling a challenge for cause, as was held in the recent case of Miller v. Com., 203 Ky. 437, where the two sections of the code in question were considered.

It is the rule that the action of the trial court in such matters is entitled to great weight (Mansfield v. Commonwealth, 163 Ky. 488), and especially are we inclined to the belief that its action in this case was proper in the light of the high tribute paid by the trial judge in his written opinion to the character and standing of the juror Drury.

Under the facts as found by the trial court we are of opinion that his action was proper; and particularly in the light of the fact that the juror Drury heard on appellant's trial the whole of the evidence in substance that was given on the Brannon trial, and in addition heard the virtual confession of the appellant himself giving the details of the conspiracy.

It is difficult to understand how appellant's substantial rights could have been prejudiced because tried with a juror who had previously heard a small part of

the same evidence given upon appellant's trial, and in addition heard the appellant make a virtual confession.

Not only so, the right of appeal in criminal cases is purely a statutory one and is not guaranteed by the basic law. It is a right given a defendant as a matter of grace by the General Assembly, but it has also imposed upon this tribunal only the power to grant new trials where the substantial rights of a defendant have been prejudiced. Even a technical invasion of the constitutional rights of a defendant upon his trial does not entitle him to a reversal unless it be such as prejudicially affects his rights. Wireman v. Com., 212 Ky. 420; Meece v. Com., 78 Ky. 586.

Upon the trial of this case there was to all intents and purposes, considering the evidence of the defendant, a plea of guilty; and therefore the only alternative the members of the jury had was either to sentence him to death or to life imprisonment. The details of the conspiracy to commit a crime they had from the lips of the defendant himself, and while it may be said that the crime of murder unexpectdly arose from the attempted consummation of the robbery, yet the law holds its members to the same accountability, it being presumed that a conspiracy to commit one crime contemplates the usual results that may grow out of its commission. The conspiracy here to commit robbery naturally resulted in the homicide, and there is no pretext that appellant is not guilty. That he had a fair trial before an impartial jury is not to be doubted, and because that jury did not exercise its right to only sentence him to life imprisonment does not authorize a reversal under the facts.

Judgment affirmed.

Whole court sitting.