## Shelton v. Commonwealth.

(Decided May 22, 1928.)

### Appeal from Whitley Circuit Court.

1. Homicide.—Conviction for manslaughter for killing subsequent to quarrel in restaurant held sustained by evidence.

2. Homicide.—In prosecution for murder, where evidence was offered tending to show reputation of deceased's wife was bad, and on cross-examination witnesses were asked whether they knew reputation before she got acquainted with defendant, held that, if

admission of such evidence was error, it was too slight to necessitate reversal.

3. Criminal Law.—Appellate court cannot consider alleged improper argument of prosecutor not embraced in nor made part of bill of exceptions.

4. Criminal Law.—In prosecution for murder, where effort was made to show that one of jurors was disqualified because he was not resident of county, evidence showing that he resided temporarily in another county, but claimed county in which prosecution was had as home, held that, even if juror was not resident of county in which prosecution was had, new trial should not be granted solely because of such fact.

5. Criminal Law.—Appellate court will not disturb refusal of trial court to grant new trial in exercise of its discretion because of juror's disqualification by expression of opinion that defendant was guilty, unless abuse appears.

6. Jury.—In prosecution for murder, statement of juror that, if case was as he heard it, certain things ought to happen, held not to show juror's bias.

7. Criminal Law.—Verdict of jury should not be set aside on ground juror was biased, unless evidence is clear and convincing that juror had bias when accepted on jury.

8. Homicide.—In prosecution for murder, testimony to conversation witness had heard between defendant and his wife and another, which occurred just a few minutes before killing and a few minuates subsequent to defendant's mistreatment in restaurant by deceased, in which defendant said as he was leaving home, "You will swear to this," even if incompetent held too vague to be prejudicial.

9. Criminal Law.—Generally, conduct of defendant either before or just after offense for which he is being tried can be proved when such conduct is inconsistent with his innocence.

10. Homicide.—In prosecution for murder, testimony to conversation witness had heard between defendant and his wife and another, which occurred just a few minutes before killing and a few minutes subsequent to defendant's mistreatment in restaurant by deceased, in which defendant said as he was leaving home, "You will swear to this," held competent.

11. Homicide.—In prosecution for murder, where defendant had gone home bleeding from wounds received at hands of man he subsequently killed, and procured an additional pistol, starting back towards spot where trouble had taken place, testimony that wife said as he left home, "Come back, Henry," held competent, as jury may have drawn reasonable inference from it which threw some light on state of mind of defendant at time he left home.

12. Criminal Law.—Where, in prosecution for homicide, complaint was made of court's appointment of commonwealth's attorney pro tem. to act in place of regular commonwealth's attorney, basis of which was that regular attorney was not out of county, and there was

nothing to show why he did not prosecute case, held that, under Ky. Stats., sec. 120, making it duty of trial judge to appoint suitable attorney in place of commonwealth's attorney during his absence, "absence" need not be from county, but only from court.

13. Criminal Law.—On appeal from conviction for manslaughter wherein jury gave defendant extreme penalty of 21 years, held that, though penalty may appear severe to appellate court, it was not burdened with responsibility of fixing punishment where evidence was sufficient to show that person on trial was guilty of offense for which he was convicted, since question of punishment was for jury.

HIRAM H. JONES for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellant, Henry Shelton, shot and killed G. E. Oaks in the city of Corbin. He was indicted for murder and the jury found him guilty of manslaughter and fixed his punishment at confinement in the penitentiary for 21 years. The killing took place on a Sunday afternoon. Appellant worked for the Louisville & Nashville Railroad Company at the roundhouse in Corbin. He was to go on duty that day at 3 o'clock p. m. In the morning of the day he had been out with one of his friends taking kodak pictures. He returned to his home between 2 and 3 o'clock. He carried with him during the day a large pistol affectionately regarded by cowards, and called a .45. He remained at his home long enough to change his trousers, which had been rent during the morning, for a pair of overalls.

There was a restaurant not far from the railroad operated by Joe and George Oaks at the time. It was a place where railroad men congregated and where lunches were prepared and served. Appellant stopped at the restaurant on his way to work to obtain a lunch. When he went in the restaurant the man that he later killed and others were there and he greeted them in a neighborly manner. G. E. Oaks was drunk at the time and he got hold of appellant, placed his arm around his neck, and, as some of the witnesses express it, he "squez" his neck. Appellant was docile, diplomatic, and apologetic. He ordered his lunch and while he was waiting for it, without any apparent reason, Oaks struck him a

severe blow with his fist on the side of his head, which staggered him against the wall of the restaurant. Appellant expressed surprise, but nothing was said by him to indicate any angry resentment. He suggested to Oaks that they were friends and Oaks agreed to this and offered to pay for his lunch. While appellant continued to wait for his lunch, Oaks again came in contact with him, struck him a severe blow with his fist, and at the same time kicked him, with the result that appellant was catapulted through the door of the restaurant and against and through a fence some distance away. Again he protested without any signs of anger, although he was injured to the extent that blood was running down his face onto his clothing. Oaks called him back into the restaurant and again protested his friendship and they shook hands as a sign that no ill feelings existed between them.

Appellant did not wait longer for his lunch, but started to leave the restaurant to go to his home. As he left Oaks again assaulted him. He went to his home, as he says, for the purpose of changing his Sunday clothes for his work clothes. Before he left the premises, however, he inquired of the wife of the slain man whether her husband had with him his pistol. The wife assured him that Oaks did not have his pistol as she had seen it under the pillow on the bed in their room before she came to the restaurant. It appears that appellant had his .45 at the time, or at least he says he did, and nobody disputes it. When he went to his home he changed his clothing and he also procured another pistol known as a .32 automatic. He says that he had borrowed that pistol from Joe Oaks a short time before for the purpose of protecting himself against holdup men while he was about the roundhouse. On the occasion when he borrowed it his big pistol was not available to him for some reason or another. He started to leave his home to go back by the restaurant on his way to work. A woman living just across the street testified that he said to his wife and a neighbor woman who was present that they must both swear to something, although she did not understand what it was he was talking about. When he proceeded a short distance from his home, this same witness said that his wife called to him and requested him to return to his home. He stopped, but did not return.

About 20 minutes had elapsed from the time he left the restaurant until he approached it again, and as he was approaching it he beheld Oaks, the man he slew,

coming towards him. He testified that Oaks approached him and that he was going to seize him and as a bluff he fired two shots in an effort to stop him, but he did not stop. Oaks seized him, according to his testimony, and he fired at him. Oaks then released him, stepped back, and made a motion as if to draw a pistol, when he shot him and killed him. The evidence of the other witnesses does not fully corroborate appellant. It is true that some of them indicate that Oaks did get to appellant and take hold of him, but a preponderance of the evidence tends to show that appellant began to shoot at the decedent when he was 20 feet away from him and continued to discharge his pistol until the decedent fell. There is not the slightest indication that any witness had any desire to color his testimony either for or against appellant.

Appellant is a small man of peaceful disposition weighing no more than 120 pounds. Oaks was a large man of a violent disposition when drunk, weighing 185 to 190 pounds. Appellant had reasons to fear him on account of what had taken place in the restaurant, but he also had ample opportunity to avoid him. The cause of this tragedy grew out of the cowardly habit prevalent in some sections of our state of carrying pistols. It is to be regretted that the law is not enforced with a stern hand against those who thus violate it. It is natural for a man who continuously carries a pistol for his imaginary protection to become a coward and be afraid to go without it.

In his motion and grounds for a new trial appellant set out several reasons why he had not been accorded a fair trial, but in his brief he relies for reversal largely on the ground that the evidence does not support the verdict. This ground cannot be sustained, as there was no lack of evidence to uphold the verdict. Another ground is urged, and that is that there was an effort to get before the jury improper statements which would indicate that appellant and the wife of the deceased had been guilty of improper relationship the one towards the other. If there was such an effort it was very slight. We find that evidence was offered tending to show that the reputation of Mrs. Oaks for virtue was bad. On cross-examination one of these witnesses was asked whether he knew what the reputation of Mrs. Oaks was before she got acquainted with Henry Shelton, the appellant. There may have been an intimation in this question that Shelton in some way was responsible for her bad reputation; but,

if there is such meaning in the question, it is latent, and, while such questions should never be allowed, we cannot reverse this case for an error so slight, if it was an error at all. The evidence of Mrs. Oaks had little to do with the conviction of appellant, and we are convinced that her reputation, whether it was good or bad, had no bearing whatever on the matter.

It is urged that one of the employed attorneys in his argument to the jury was guilty of misconduct. It appears in a supplemental motion and grounds for a new trial, which the court did not allow to be filed, that one of the attorneys made statements highly reprehensible. It is charged that he said:

"Henry Shelton knew that G. E. Oaks was a railroad man and away from home a great deal, and Henry Shelton went there thinking that Oaks would be gone for the purpose of seeing his wife and debauching his home. Mrs. Oaks was not to blame for it. That mean man was to blame."

There was nothing in the evidence to justify the statements made by this attorney, if he made them. We cannot consider the matter, however, as the alleged improper argument of the attorney was not embraced in, or made a part of, the bill of exceptions. Hendrickson v. Commonwealth, 147 Ky. 298, 143 S. W. 993; Blaton v. Commonwealth, 147 Ky. 812, 146 S. W. 10; Cooley v. Commonwealth, 185 Ky. 142, 214 S. W. 898.

There was an effort made to show that one of the jurors was disqualified because he was not a citizen of Whitley county. The evidence shows that this juror was residing at the time temporarily in another county, but he claimed Whitley county as his home. We think the juror was a resident of Whitley county; but, it he was not, a new trial should not have been granted solely because a juror was incompetent on account of his being a nonresident of the county. The general rule is so stated in 16 Corpus Juris, p. 1156. There is a full discussion of this question in an opinion by the Georgia Supreme Court in the case of Brown v. State, 105 Ga. 640, 31 S. E. 557. It was there held that the question of the qualification and competency of a juror is one exclusively for the court. It was also so held by the Court of Appeals of Alabama in a similar case, the case of Carson v. Poynter, 11 Ala. App. 462, 66 So. 910.

There was an effort made to support by affidavits the ground for a new trial that one of the jurors had heard a part of a former trial. The juror, in his counter affidavit, denied that he had heard any portion of the trial. The trial court overruled the motion for a new trial based on this ground. In the case of Davis v. Commonwealth, 215 Ky. 244, 286 S. W. 790, it was urged as a ground for reversal that one of the jurors heard a part of another trial where the same state of facts were relied on by the commonwealth for conviction. This court held in that case that the action of the trial court in such matters is entitled to great weight, and it will not be disturbed by this court, unless it is convincingly shown that the rights of the appellant were prejudiced. The affidavit of the juror in this case is convincing that the affiants who stated that he was present at the former trial of the case were mistaken.

It is further contended by appellant that the same juror was disqualified because he had expressed an opinion that the appellant was guilty. Two affidavits were filed in support of this ground. The affiants stated that they had heard the juror say that appellant had a bad case, and, if it was as he heard it was, he ought to have life, and, if he was on the jury to try him, that he would give him life. The juror filed his affidavit, in which he said that he did not know one of those who had made the affidavit, and, while he knew the other, he had never made any such statement to him. The trial court was familiar with local conditions and the weight that should be given to the affidavits submitted to him in support of this ground and in opposition to it. Unless he abused a sound discretion, this court will not disturb his action. The granting of a new trial is largely in the discretion of the trial judge. Joy v. Commonwealth, 203 Ky. 426, 262 S. W. 585. Even if the juror had made the statements attributed to him, we doubt if the statements showed bias on his part. The substance of what it is alleged he said is that, if the case was as he had heard it, certain things ought to happen. A similar question was discussed in the case of Gleason v. Commonwealth, 145 Ky. 128, 140 S. W. 63, Ann. Cas. 1913B, 757; Chilton v. Commonwealth, 170 Ky. 491, 186 S. W. 191, Ann. Cas. 1918B, 851, and in the case of Elliott v. Commonwealth, 154 Ky. 696, 159 S. W. 534. In each of these cases this court reached the conclusion that statements similar to those attributed to the juror in this case did not show

bias. The verdict of a jury should not be easily set aside on evidence of this character. If those who are deeply interested in keeping one charged with the crime out of the penitentiary should be allowed to do so by filing an affidavit that they had heard a juror say that he believed the defendant was guilty before the juror was accepted, we are persuaded that in important cases it would be difficult to uphold the verdict of many juries. Such a ground should not be sustained, unless the evidence is clear and convincing that the juror had a bias when he was accepted on the jury.

Another. ground relied on is that a witness was allowed to testify that she heard a conversation between appellant and his wife and one Florence Sawyers, which occurred just a few minutes before the killing, in which converation the appellant said as he was leaving his home, "You both will swear this." The appellant denied that this conversation took place. This was a few minutes after he had been mistreated in the restaurant by Oaks, and a few minutes before he killed Oaks. This statement is too vague to hold that it was prejudicial, even if it should be held incompetent. It is the universal rule that the conduct of the accused, either just before or just after the offense for which he is being tried, can be proved when such conduct is inconsistent with his innocence. Meredith v. Commonwealth, 215 Ky. 705, 286 S. W. 1043. The statement, if made by appellant, would indicate that he had done something just before he killed Oaks that he was desirous that the parties to whom he was speaking should swear to. We think the evidence was competent.

As the appellant left his home his wife said to him, "Come back, Henry." It is urged that this evidence was incompetent. What the wife said to him may have had no connection with what happened immediately thereafter, but we think the jury was entitled to consider this request of his wife. He had gone to his home a few minutes before bleeding from wounds received at the hands of the man he killed. He had procured an additional pistol and was starting back towards the spot where the trouble had taken place. While the statement of his wife, standing alone, does not mean anything, yet the jury may have drawn a reasonable inference from it which threw some light on the state of mind of the appellant at the time he left his home.

Another complaint is that the court appointed a commonwealth's attorney pro tem. to act in the place of the regular commonwealth's attorney. The basis of this complaint seems to be that the commonwealth's attorney was not out of the county and there was nothing to show why he did not prosecute the case himself. Section 120, Ky. Stats., makes it the duty of the trial judge to appoint a suitable attorney to act in the place of the commonwealth's attorney during his absence at any term, or part of a term, of a circuit court. The law does not mean that the commonwealth's attorney must be absent from the county, but only that he must be absent from the court. This contention by appellant is without merit.

Lastly, it is contended that the punishment inflicted is excessive. That was a question for the jury. Appellant was given the extreme penalty for manslaughter. The penalty may appear severe to us, but we are not burdened with the responsibility of fixing the punishment where the evidence is sufficient to show that the person on trial was guilty of the offense for which he was convicted. We find no error in the record after a most careful investigation.

The judgment is affirmed.