## Combs v. Commonwealth.

(Decided Oct. 2, 1934.)

514

MONT WALKER for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Lloyd Combs appeals from a judgment convicting him of the murder of Willie Bond and fixing his punishment at life imprisonment.

The case is here without a bill of exceptions, but the record is accompanied by the following stipulation, signed by counsel for appellant and the commonwealth's attorney:

"It is stipulated and agreed between the Commonwealth and the appellant, by respective counsel, that the evidence in the lower court was in part as follows, and that the Court of Appeals may receive and consider same, in so far as it goes, as though it were properly certified as a part of the transcript.

"[1] That Minnie Binion, witness for the Commonwealth testified on the trial in the lower court that appellant stated to her that he would kill William Bond, the deceased.

"[2] That appellant introduced no testimony of any threats against.him by the deceased, William Bond.

"[3] That there was testimony that William Bond, the deceased, had a pistol and the pistol was introduced in evidence and it was identified by one witness for appellant as her pistol and which she let him have some time before the shooting.

"[4] That appellant and so did Minnie Binion, prosecuting witness, testified that Bond, the deceased, placed a pistol against appellant's side in May 1933, a few months before the shooting and ran appellant out of her house.

"[5] That the chief prosecuting witness admitted that she permitted appellant to come to her home after that time and that she visited several towns surrounding Ashland and roomed with appellant as though she was his wife.

"[6] That after the deceased Bond had driven appellant out of her house in May 1933 she, the next day told him, Bond, to leave and that he did leave but she later permitted him to visit her home.

"[7] That at the time of the killing appellant had his clothes there and was rooming and eating there when he was in Ashland.

"There was other evidence introduced at the trial but the above is all that appellant cares to bring before the court in support of the grounds on which he relies.

"Agreed to and signed this the 4th day of May, 1934."

Error of the trial court in overruling appellant's motion for a new trial on the ground that one of the jurors had expressed an opinion about the case long before he was called as a juror is the first ground urged for reversal. In support of this ground appellant filed the affidavits of two parties to the effect that they and Sam Click were all present on a certain occasion when the killing of William Bond by appellant was mentioned and talked about, and that during the discussion Click said, in substance, that from what he knew about it, if he was on the jury, he would be for killing or electrocuting Combs. On the other hand, Click, the juror, filed

an affidavit denying that he made the statement either on the occasion in question or at any other time. The temptation, after conviction, to procure the needed evidence that a juror had formed and expressed an opinion prior to the trial, and the ease with which it may be obtained, are such that trial courts should proceed with great caution in ordering a new trial on that ground. Hence the rule that trial courts should not order a new trial on that ground unless the evidence is clear and convincing, and that on appeal the ruling of the trial court is entitled to great weight. Mansfield v. Commonwealth, 163 Ky. 488, 174 S. W. 16; Shelton v. Commonwealth, 224 Ky. 671, 6 S. W. (2d) 1094. Here the case turns on the credibility of the witnesses, of which the trial court is the best judge, and we are not disposed to hold that the evidence, though consisting of two affidavits as against the affidavit of the juror alone, is so clear and convincing that the trial court should have believed the witnesses for appellant rather than the juror himself. It follows that the trial court did not err in overruling the motion for a new trial on the ground that the juror Click had formed and expressed an opinion.

The next ground relied on for a new trial and urged for a reversal of the judgment is newly discovered evidence. In support of this ground we have the affidavit of Bell Meadows to the effect that in the fall of 1932 she met Willie Bond on the street in Normal, Boyd county, and had a conversation with him; that during the conversation the name of Lloyd Combs was mentioned, and Bond said, "Lloyd Combs was one man he would kill." Afterward the witness was examined somewhat at length, and testified as follows:

"Q. How did you happen to be talking to him? A. I saw him and said how do you do and he said how do you do and I said I must go because there is Lloyd Combs and he is an officer and he will arrest me for gawking on the street.

"Q. What did Bond say when you said that? A. He said, Damn Combs, I will kill him.

"Q. About how far away was Combs at that time? A. About 5 or 6 blocks up the street. Just looking toward the street car. * * *

"Q. Did you know where Willie Bond lived or know his people? A. No, sir.

"Q. What kind of a looking man was Willie Bond? A. I don't know, I can't explain the color of his eyes nor hair just like passing a strange man.

"Q. Was he tall or short? A. He was heavy and medium sized.

"Q. What you called a fat man? A. Not exactly, he was sorta tall, what you might say tall and not very heavy. He expresses himself to me as Willie Bond and he might have been somebody else.

"Q. Do you know whether the man you are talking about is the man that was killed by Lloyd Combs? A. No, sir. I don't know for sure. I didn't see him after he was dead. I believe he was.

"Q. The only times you saw him were the two times you mentioned in your writing? A. Yes, sir.

"Q. And all you heard him say about Lloyd Combs was what you said? A. Yes, sir."

The argument is that the threat made by deceased, though not communicated to appellant, was admissible for the purpose of showing the state of mind of the deceased and throwing light on the question, who was the aggressor, and, it being admitted by the stipulation that no other threat was shown on the trial, a new trial should have been granted on the ground of newly discovered evidence. Notwithstanding the fact that no threat was shown on the trial, it was made to appear that in May, 1933, a few months before the shooting, the deceased placed a pistol against appellant's side and ran him out of the house, thus showing that there was enmity between the two. Notwithstanding a prior threat by the deceased, acquittals or convictions of homicide usually turn on what occurred immediately before and at the time of the homicide. The case is here without a transcript of the evidence, and such facts and circumstances have not been made to appear. For aught that the record discloses, the homicide may have been wholly unjustified, even though there was a prior threat. Judgments of conviction will not be reversed for errors that are not prejudicial. A new trial on the ground of newly discovered evidence will not be granted where its preponderating influence on another trial is doubtful. Sutton v. Commonwealth, 221 Ky. 219, 298 S. W. 707. Here the witness had only seen the deceased once before, and her identification of him is by no means certain. She

518

claims that she saw appellant five or six blocks up the street, and said, "I must go, there is Lloyd Combs, and he is an officer, and he will arrest me for gawking on the street." Immediately following this the deceased said, "Damn Combs, I will kill him." This evidence carries with it many of the earmarks of improbability, and we who have not been favored with all that occurred at the time of the homicide cannot say that the trial court, which heard all the evidence, erred in overruling the motion for a new trial on the ground that he entertained a serious doubt as to the preponderating influence of the evidence on another trial.

On the whole we find no error in the record prejudicial to appellant's substantial rights.

Judgment affirmed.