## Tuggle et al. v. Commonwealth.

(Decided Feb. 4, 1936.)

C. A. NOBLE for appellants.

B. M. VINCENT, Attorney General, A. E. FUNK, Assistant Attorney General, and J. A. SMITH, Commonwealth's Attorney, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

For the killing of Will McWhorter, colored, the appellants, Everett Tuggle and Arthur Barton, were convicted of manslaughter and sentenced to serve fifteen years in prison. The homicide occurred at what is called throughout the record a "beer joint," three miles south of Hazard, about 2 o'clock in the morning, one night in July, 1934. Earlier in the night McWhorter's automobile had run out of gasoline nearby and at the place Barton let him have about two gallons taken from the tank of his taxicab. There was a quarrel over this, but it seems some one paid for the gasoline, and the parties separated. A few hours later McWhorter returned, according to the commonwealth's evidence, for the purpose of taking Charlie Wallace and another to Glomarr, a nearby village, where he was to get some money with which to buy McWhorter's pistol. While McWhorter was in his machine, Tuggle went to it with a pistol in his hand and wanted to know why he was running a taxi without a license. Some words passed between them, and Barton standing nearby called: "Shoot him, Everett, shoot him!" Whereupon Tuggle began shooting McWhorter, who had one arm in the open window of his car door and the other on the steering wheel. The car started moving and then McWhorter returned the fire. The door came open and he fell to the ground. No one went to his assistance for several hours, when he was found dead. He was shot five times in and about his head and shoulders. Neither Tuggle nor Barton was shot. They are cousins. There is some other evidence tending to show a concert of action.

The substance of the defendants' evidence is that the previous difficulty was over, although Barton had not been paid for the gasoline. Barton had carried several taxi passengers to their destinations, and was

again passing the place when one of his passengers suggested stopping for a bottle of beer. McWhorter drove up and, seeing the taxicab, asked who was running it. Barton went out and told him that he was, and the colored man asked if he was the man who had sold him the gasoline and demanded that he take his foot off the running board of his car or "I'll shoot you in two." McWhorter had a pistol in his hand, and as he raised it Barton grabbed it. The pistol went off, and Barton fell back to the ground, and some one holloed: "That nigger has killed Arthur Barton." Tuggle was standing about three feet away, and testifies that the blaze of the pistol's discharge came in his direction and he started shooting in self-defense.

There are several witnesses on each side, and important details were related; but it is apparent without further narration that there was no place for a directed verdict of acquittal as the appellants argue.

The indictment charged that one of the defendants had done the actual killing and the other was present "aiding and abetting and counseling and advising the same." The instruction authorized a conviction of Barton if the jury believed beyond a reasonable doubt that he did "aid, abet, advise, counsel, encourage and command" Tuggle to so shoot and wound McWhorter. It is claimed that prejudicial error was committed by the use of the additional phrase "encourage and command," since neither method of abetting the crime was charged in the indictment. We think such acts were embraced in the other descriptive methods. For practical purposes in this connection all the words are synonymous. It is to be noted the several methods were conjunctively rather than disjunctively submitted. The result was favorable to the defendant Barton, since, strictly interpreted, the jury was required to believe that each and every act or method of abetting was committed by him instead of only one of them.

The trial was had in February, 1935, but the ruling on the motion for a new trial was suspended for some time, apparently because of the illness of one of the defendants. In May supplemental grounds were filed, charging misconduct of a juror, Mrs. Marie Baker. This was in two distinct particulars.

One Clay Collins made an affidavit that on some undisclosed day prior to the trial while he was being

conveyed as a prisoner from Tennessee to Hazard by John Baker, a deputy sheriff who is the husband of Mrs. Marie Baker, he and Baker discussed the homicide in her presence. Baker remarked that "they must be guilty because they had run off and it had been a hard job to get them back to Hazard for trial." There was no expression of opinion or indication of prejudice by Mrs. Baker. It has been often ruled that proof of bias by a juror must show that it existed at the time of the trial and it must be established by clear and convincing evidence. Chilton v. Commonwealth, 170 Ky. 491, 186 S. W. 191, Ann. Cas. 1918B, 851; Canter v. Commonwealth, 176 Ky. 360, 195 S. W. 825; Shelton v. Commonwealth, 224 Ky. 671, 6 S. W. (2d) 1094. The court properly held this ground for a new trial insufficient.

J. L. Ward deposed that during the progress of the trial he went to the home of the juror, Mrs. Baker, to get her laundry. She came to the door and invited him into the room while she gathered the laundry. During the course of the conversation, she observed that "half of the young generation ought to be in the penitentiary." There was no guard or any other person in the room except Mrs. Baker's little girl, who was asleep. The affiant deposed that if the juror had a guard at the time he did not see or hear her.

The record discloses that there were eleven men and one woman, Mrs. Baker, on the jury. She was placed in the charge of Pearl Riley, who was sworn as her guard. There is no other proof concerning the alleged separation of the jurors in violation of the Code provision. Ward's affidavit does not in fact show that her guard as an officer of the court was not performing her duty. She could have been in an adjoining room with the door open and have been fully cognizant of what was going on. There is a presumption that an officer performed his duty. The showing made here is hardly sufficiently explicit or positive that the guard did not perform her sworn obligation. Although the juror made some general extravagant statement about "half of the young generation," it is not suggested she had reference to the case on trial or the conversation related to it.

The Criminal Code of Practice provision, section 244, requiring that members of a jury of the same sex

shall be kept together in charge of officers on the trial of offenses which may be punished capitally or by life imprisonment, is for the purpose primarily of assuring freedom from influence or the reception of information concerning the case other than during the progress of the trial in open court. It is in supplement of section 246, concerning the duty of jurors not to discuss the case among themselves or permit any one else to communicate with or speak to them on any subject connected with the trial. The trend of the rulings has been toward a liberal application and a construction that a substantial compliance with the statute was sufficient unless there was some fact or circumstance disclosed which indicated in some degree that a juror had been approached or an opportunity afforded for influencing him. Thus where the entire jury was so quartered or situated as to be under the eye and within the hearing of the deputy sheriff or guard, and it did not appear that there was any attempt to communicate with any separated juror, it is held not sufficient to warrant a new trial. Barnes v. Commonwealth, 179 Ky. 725, 201 S. W. 318; Wynn v. Commonwealth, 188 Ky. 557, 222 S. W. 955; Shackelford v. Commonwealth, 185 Ky. 51, 214 S. W. 788; Adkins v. Commonwealth, 197 Ky. 385, 247 S. W. 26; York v. Commonwealth, 201 Ky. 431, 257 S. W. 38; Wilson v. Commonwealth, 243 Ky. 333, 48 S. W. (2d) 3; Shorter v. Commonwealth, 248 Ky. 37, 58 S. W. (2d) 224. Of course, different circumstances require different conclusions, not only as to whether the letter and the spirit of the statute were observed, but, of controlling importance, whether the transaction adversely affected the substantial rights of the defendant. There must always be kept in mind, particularly on a review by this court involving a discretionary action of the trial judge, the repeated admonition of the statute that a judgment of conviction shall not be set aside or reversed for any error when upon a consideration of the whole case the court is satisfied that the substantial rights of the defendant have not been prejudiced thereby. Sections 271, 340, Criminal Code of Practice.

Judgment affirmed.