## Gleason v. Commonwealth.

(Decided October 25, 1911.)

## Appeal from Fleming Circuit Court.

1. Juror—Affidavit, or Oral Testimony Not Received to Impeach Conduct.—The affidavit or oral testimony of a juror will not be received to impeach the conduct of a fellow juror, but will be admitted in support of a verdict attempted to be impeached by other testimony, whether the juror's testimony goes to deny or explain expressions of bias before the trial, or deny or explain misconduct during retirement.

2. Newly Discovered Evidence.—The statements in the affidavit setting up the newly discovered evidence would be incompetent as well as immaterial, and for these reasons the circuit court did not err in holding the affidavit insufficient to authorize a new trial.

JOHN P. McCARTNEY, B. S. GRANNIS for appellant.

JAS. BREATHITT, Attorney General, THEO. B. BLAKEY, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellant was tried in the court below under an indictment for the murder of George Courtney, but the jury, by their verdict, found him guilty of voluntary manslaughter and by judgment of the court his punishment was fixed at confinement in the penitentiary, at hard labor, for an indeterminate period of not less than two, nor more than twenty-one years.

Appellant sought a new trial on numerous grounds, but only two of them are urged on this appeal for a reversal of the judgment. 1st. That a member of the jury, previous to the trial and before he was accepted as a juror, had formed the opinion that appellant was guilty of the crime charged in the indictment and declared he should be hanged therefor, or sent to the penitentiary for life. 2nd. The discovery after the trial of new evidence, material to his defense, which he could not by ordinary diligence have discovered sooner.

Prior to the amendment of section 281, Criminal Code, by the last Legislature, a ruling of the circuit court in refusing a new trial in a criminal case should not be reviewed by this court, but, as amended, that section now permits any error of the circuit court in refusing a new trial to be reviewed on appeal. Acts 1910, page

269; Spencer v. Commonwealth, 122 S. W., 800; Wilson v. Commonwealth, 140 Ky., 1.

If, therefore, the circuit court erred in refusing appellant a new trial on the ground first urged by him, we may reverse the judgment for such error. By the affidavits of three persons filed in support of this ground, it was stated that J. M. Morris, a member of the jury by which appellant was tried, expressed before the trial and before he was accepted as a juror, the opinion that appellant was "guilty of the murder of George Courtney and should be punished therefor by being hanged or sent to the penitentiary for life." Morris gave an affidavit denying that he formed or expressed any opinion as to appellant's guilt or innocence before the trial. In addition, there were filed the affidavits of several members of the jury from which it appeared that Morris, at no time during the trial, manifested any bias or prejudice against appellant, but that on the contrary, he was largely instrumental in influencing several of the jury, who were in favor of finding appellant guilty of murder and punishing him accordingly, to agree to a verdict of voluntary manslaughter. We are of opinion that the affidavits of the other jurors were properly admitted as evidence on the charge of bias against Morris. The affidavit or oral testimony of a juror will not be received to impeach a verdict or to impeach a fellow juror's conduct, but will be admitted in support of a verdict attempted to be impeached by other testimony, whether the juror's testimony goes to deny or explain expressions of bias before the trial, or to deny or explain misconduct during retirement. We are aware that this doctrine does not meet with favor in some of the States, but we gave it our approval in Howard v. Commonwealth, 24 R., 612; 69 S. W., 721, and have since adhered to it.

In elaboration of this doctrine Mr. Wigmore in his valuable work on Evidence (Vol. 4, Sec. 2354, sub-sec. 4), says:

"Moreover, this object of disproving bias alleged to have existed before trial may be attained by showing expressions and conduct during retirement as an evidential fact relating back and negativing the supposed prior bias. But where the object is to determine the grounds or motives of the verdict as in themselves important for sustaining it (for example to show that a certain illegal paper or erroneous charge did not influence the verdict)

here the other principle (ante, sec. 2349) applies to forbid this. The distinction is that in the former case the juror's expressions are not considered in their aspect in establishing motives for the verdict, but merely as part of his whole conduct going to determine the question of his former bias." 11 Am. & Eng. Ency. of Law, 1008.

Considered as a whole the evidence fails to show bias on Morris' part. If, before appellant's trial he gave expression to the opinion that his act in taking Courtney's life was murder and should be punished as such, he probably spoke in the excitement of the moment and without information of all the facts attending the homicide. Opinions are often hastily formed and expressed under such circumstances, and as readily changed, retracted and even forgotten, when reflection and judgment assume their sway. Such was doubtless the case with Morris; at any rate the testimony of his fellow jurors as to his conduct in the jury room and throughout the trial, exonerated him from the charge of bias. In addition, the lightness of the verdict demonstrates that the entire jury were merciful in determining the degree of appellant's crime. We are satisfied that the circuit court's refusal to grant appellant a new trial on the ground of previous bias on the part of Morris, was not error. In order to intelligently consider appellant's second contention, it will be necessary to understand the facts of the homicide as disclosed by the evidence on the trial. The place of the homicide was the railroad station at the village of Ewing in Fleming County. Appellant shot Courtney with a pistol, the ball penetrating his side and causing death in a few hours. There were but two eye witnesses to the shooting besides appellant, one of these, R. S. Porter, testified that he was sitting near the station platform and saw appellant come out of the depot ticket office, walk down the platform steps and pass by deceased, who stood with his back to the platform talking to L. C. Mobberly; that after appellant had gotten fifteen or twenty feet from deceased he stopped, faced him and said: "George, I want to speak to you a minute," at the same time raising his hand which held the pistol, and as deceased turned toward him shot him; deceased thereupon slowly sank to the walk upon which he was standing, holding feebly to the edge of the platform with his hands as he did so.

Porter further testified that after shooting deceased

appellant walked away, but in a very short time returned to where he was at the time of the shooting, and looking at deceased, remarked: "Well, I guess I got you that time." This remark was also heard by another witness who did not see the shooting but saw appellant's immediate return to where deceased was lying wounded.

Mobberly, the other eye witness, testified substantially as did Porter. He differed from Porter only in this, that appellant said to deceased in passing him instead of after he got by him, "George, I want to speak to you a minute," and that appellant as he shot deceased backed away from him. He, however, saw appellant shoot when deceased turned toward him after he said he wanted to talk with him. Neither Porter nor Mobberly saw deceased have a pistol in his hand or either hand on a pistol; indeed, no witness, not even appellant, claimed to have seen a pistol in deceased's hand, although one was found in his pocket after he was wounded.

Three women testified for the Commonwealth that they were in the depot ticket office when appellant entered it, saying he wished to purchase a ticket to Cincinnati; that upon being told by the ticket agent there was a package for him in the express office, he left the ticket office without buying a ticket, and while he was out the shooting occurred; that after shooting deceased, he returned to the ticket office and said, according to two of the woman, he had "fixed George Courtney." The third woman testified, however, that he said in substance "he had to do it, Courtney was about to shoot him."

The Commonwealth proved by Isaac Hysong that ten or fifteen minutes before the shooting deceased passed his shop on the way to the depot and that appellant, who was with the witness, called his attention to deceased as he passed, saying he had his hand in his pocket; that appellant then complained that deceased was paying too much attention to his wife, and said he feared somebody would be hurt before it was settled. After this statement appellant went himself to the depot, passing and seeing deceased as he went into the ticket office.

The evidence also showed that appellant had been separated from his wife for more than a year; that he was a worker in metal and had for several years before their separation lived much of his time at Maysville, Cincinnati, Pittsburg, St. Louis and in California, follow-

ing his avocation, and that during these years his wife and children had made their home with her parents at Ewing. It was also shown by the evidence that deceased had been paying some attention to appellant's wife, though it was not made to appear that the relations between them were improper or of such a character as to injure her reputation for virtue. But whatever they were, it was evident that they had excited appellant's jealousy and caused him to entertain illwill toward deceased. There was also some evidence tending to show that deceased did not entertain the best of feeling for appellant, for to one witness who advised him that appellant did not like his attentions to his wife and that trouble might result if he continued them, he said "he could shoot as well as Gleason." Appellant's own testimony as to the facts of the shooting were, in substance, that as he passed deceased in going out of the depot on his way for the express package, he touched him with his hand on the shoulder and said, "George, I want to speak to you a minute," that the latter thereupon faced him with a scowl and commenced to draw from his pocket with his right hand a pistol, seeing which he (appellant) drew his pistol and began to back away, telling deceased not to shoot, but that as deceased advanced upon him still trying to draw his pistol, he shot and wounded him.

Viewing appellant's testimony from the standpoint most favorable to him, it leaves no doubt of the fact that he approached deceased when he was in a peaceable conversation with another and unaware of his presence; and if it be assumed that deceased was awaiting an opportunity for a difficulty with appellant and made the first attempt to draw a pistol, the latter's conduct provoked it and showed that he was equally willing to engage in the combat; that he was armed for the purpose, did what was necessary to precipitate it, and expressed in the presence of his wounded enemy the gratification he felt from the act of shooting him. So, if appellant's testimony be accepted as the whole truth of the matter, it was a mutual combat or affray, which made the shooting of deceased voluntary manslaughter. On the other hand if the testimony of the two eye witnesses to the shooting be accepted as the true account thereof, it was amply sufficient to show appellant's guilt of the crime of voluntary manslaughter. View them as we may, the facts authorized the verdict returned by the jury.

The alleged newly discovered evidence on account of which appellant asked a new trial is found in his affidavit, and consists of certain statements it is claimed would be made in his behalf on another trial, by Stockdale, Williams, Daugherty, Sherwood and Price. The witness, Stockdale, it is claimed, heard a statement from deceased after his removal to a physician's office following the shooting, in which he said that just before appellant shot him, he approached and made some remark to him; that when he (deceased) turned to respond to appellant's remark, the latter was close to him, and that with his left hand he struck down appellant's hand holding the pistol, after which the shot was fired.

The avowed object of this statement is to contradict the Commonwealth's witness, Porter, who testified that appellant was fifteen or twenty feet from deceased when he shot him. We do not attach to Stockdale's statement the importance appellant's counsel give it. Appellant may have been close to deceased, pistol in hand, when he first accosted him, and after deceased knocked down his pistol hand gotten fifteen or twenty feet from deceased before shooting him. Mobberly, who saw the shooting as well as Porter, testified that appellant was backing away from deceased when he shot him and in the statement attributed by Stockdale to deceased, the latter did not say appellant was close to him when he shot him, but only that such was his position when deceased knocked down the pistol. It is patent Stockdale's testimony would not contradict Porter's on a material point, and that considered with respect to appellant's testimony it would be merely cumulative and not appreciably corroborative.

Moreover, it does not appear from what Stockdale would testify that the statement of deceased in the physician's office would be competent as a dying declaration. Stockdale says the statement was made by deceased after being advised that he was fatally wounded. This was a mere conclusion on the part of Stockdale. Was it the attending physician who so advised deceased, and if so what did he say to him? Was the advice such as to induce in his mind the belief that recovery was impossible and death impending? (Mulkey v. State, 113 Pac. Rep., 532; Coyle v. Commonwealth, 29 R., 340; Vaughn v. Commonwealth, 86 Ky., 434; Commonwealth v. Lawson, 25 R., 2188; Mathey v. Commonwealth, 14 R., 184.)

None of these necessary facts appear from the affidavit setting forth what Stockdale would testify; therefore, the statement attributed to deceased would be incompetent, as well as immaterial, and for these reasons the circuit court did not err in holding it insufficient to authorize the granting of a new trial.

Time will not be consumed in discussing the facts to which it is claimed the other newly discovered witnesses would testify as they relate to immaterial matters which throw no additional light upon the case.

The instructions, which are not objected to, aptly advised the jury of all the law of the case. The record furnishes no cause for disturbing the verdict. Wherefore, the judgment is affirmed.