## Blanton v. Commonwealth.

. (Decided April 19, 1912.)

## Appeal from Harlan Circuit Court.

1. Criminal Law—Evidence of Former Difficulty.—It is competent to prove the fact that there had been a previous difficulty between the accused and the deceased, but not the details of the difficulty.

2. Trial—Exception to Ruling Necessary.—In order that a ruling of the circuit court may be reviewed by the Court of Appeals, it is necessary that an exception be taken thereto at the time the ruling is made.

3. Trial—Misconduct of Attorney.—The misconduct of an attorney in the argument of the case can not be reviewed where no objection was made to the conduct, at the time.

4. Trial—Misconduct of Counsel Must be Shown by Bill of Exception.—Where there was a failure to object to the misconduct of counsel, at the time, the alleged misconduct can not be brought before the court by affidavits filed in support of a motion for a new trial; such misconduct can only be shown by the bill of exceptions, and that the objection was taken at the time of the alleged misconduct.

5. Appeals in Criminal Cases.—Section 281 of the Criminal Code of Practice, as amended by the Act of 1910, does not authorize the Court of Appeals in reviewing a criminal case upon its merits, to take into consideration rulings of the trial court to which no objection was made at the time.

6. Appeal and Error in Criminal Cases.—The amendment of 1910 to section 281 of the Criminal Code of Practice was not intended to change or enlarge the powers of the circuit court in the trials of criminal cases; it only enlarged the powers of the Court of Appeals by giving it the right to review the case upon the merits, and reverse it if the verdict was not sustained by sufficient evidence. The amendment merely gives an additional ground of review; it in no wise abrogates the method of presenting the ground.

J. S. FORESTER, ACREE & STEWART, FRANK BAKER, H. L. HOWARD and C. B. TURNER for appellant.

JAMES GARNETT, Attorney General, M. M. LOGAN, Assistant Attorney General and J. G. FORESTER for appellee.

Opinion of the Court by Judge Miller—Affirming.

The appellant, Thomas Boyd Blanton, appeals from a verdict and judgment of the Harlan Circuit Court by which he was found guilty of voluntary manslaughter and sentenced to the penitentiary for a term of from two

to twenty-one years, under an indictment for the willful murder of his father-in-law, Sam Bailey, on November 14, 1911.

Several years ago Blanton married the daughter of Bailey, and was living with her on one of Bailey's farms, near the latter's home. Early in the summer of 1911, Blanton's wife, expecting to be confined, was, with Blanton's consent, taken to her father's home, where she could be better cared for. Blanton went with her, and stayed there for a week or more. After Blanton had been at Bailey's house for about a week, and while under the influence of liquor, he began to talk about the coming school election, and remarked that Dr. Green had been trying to get him to vote for Jesse Howard; whereupon Mrs. Bailey, his mother-in-law, said, "Why, Thomas Boyd, are you not going to vote for old man Jesse Howard?" He answered, "No, by God, I am not." Mrs. Bailey then told Blanton he ought to support Howard, for he had been owing Howard a long time, and Howard had been good to him. This seems to have angered Blanton; and Sam Bailey, his father-in-law, who, up to this time had said nothing, addressing his wife, said, "Bettie, you need not try to make anything out of Tom Boyd; he will do something sorry every time." Bailey, knowing that Blanton was drunk, told him not to bring any whiskey on his place. Shortly thereafter Blanton left Bailey's house and went to live with a neighbor. Blanton's conduct becoming no better, a short time after this his wife went with her mother, and removed her personal effects from her husband's home to her father's house.

One night in July, Blanton, while drunk, went again to Bailey's house, carrying his shotgun, and called for a clock which he had left at Bailey's; and when his wife gave the clock to him he broke it, and fired off his gun near the house. Bailey was at home and saw everything that happened, but said nothing, beyond directing Blanton not to come upon the place. Blanton then left and went to the house of Riley Stepp, where he remarked that he was going back over to Bailey's house and have his meat, or kill every one of them. About this time Blanton brought a suit against Bailey for alienating his wife's affections. Blanton had a conversation with Dr. Green, in which he wanted Green to bring about a compromise and get his wife to come back to him, but Green told Blanton that Bailey said he had never told her to

live with Blanton, or not to live with him.  In reply to this remark of Green's, Blanton said, "The first thing Sam Bailey knows, he will know nothing."  Sometime after this Blanton had a conversation with Saylor, in which Blanton said, "Have you heard about Sam Bailey taking a rope and hanging himself over the school election?"  And Saylor having said "No," Blanton then replied, "I wish I could get to tie the knot."

The relations between Blanton and Bailey grew worse rather than better; and, after Blanton had filed the damage suit against Bailey above referred to, Bailey went to town and had notices prepared for service upon Blanton, calling upon him to vacate the farm at the end of the year.  On his way home Bailey went into a pool room at Wallin's Creek, and took a seat upon the bench near the door.  Blanton was sitting near the stove toward the middle of the room, and it does not appear that Bailey knew that Blanton was there.  Shortly afterward, however, Bailey, who was a deputy sheriff, laid down his tax book, wrote something on a paper in the nature of a notice, and quietly stepped over to the stove where Blanton was, and handed him the paper or notice.  Blanton asked Bailey to read it; but Bailey told Blanton to read it, adding that he must be "damn sure to obey it."  Bailey walked back to his seat near the door, and Blanton put the notice in the stove.  At this point the testimony is somewhat contradictory.  It appears, however, that very shortly thereafter Bailey was heard to speak to Blanton, telling him to take his hand down and not to draw his pistol, that if he did draw his pistol Bailey would kill him.  At the same time Bailey advanced upon Blanton and caught him by the arm, while Blanton was attempting to draw a pistol from his hip pocket; and as Blanton persisted in his attempt to draw his pistol, Bailey fired, shooting Blanton through the arm; whereupon Blanton fired several shots, killing Bailey almost instantly.

The instructions to the jury correctly gave the whole law of the case, and there is no complaint whatever as to them.

1. It is insisted, however, that Mrs. Bailey should not have been allowed to testify to the details of the former differences in the summer of 1911 between Sam Bailey and Blanton; and Carnes v. Commonwealth, 146 Ky., 425, is relied upon in support of this contention.  While adhering to the general rule there an-

nounced, we are of opinion that it is not in conflict with the rulings of the circuit court in the case at bar. In White v. Commonwealth, 125 Ky., 705, we said:

"It appears that the lower court admitted a large part of appellant's testimony as to the attack made on him by Layne with the knife and at another time with a club a year or more before the homicide, but later, and before the case was submitted to the jury, excluded all of it from their consideration, except the bare fact that there had been previous difficulties between them. It is insisted for appellant that this ruling of the trial court was error, and in that conclusion we concur, for the excluded testimony, as well as the threats of Layne and his bullying and contemptuous manner toward appellant when they chanced to meet, was admissible as tending to show his animus toward appellant, and whether or not the latter at the time of the homicide had reasonable grounds to believe and did in good faith believe that he was in peril at the hands of Layne."

And after quoting at length from Kennedy v. Commonwealth, 14 Bush, 340, we further said:

"We do not mean to say that it would have been proper for the court to have allowed evidence as to all the details of the cutting and wounding of appellant by Layne, or of the assault made upon him by the latter with a club, but the fact that both assaults occurred, the general character of the injuries received by appellant at the hands of Layne, and the further fact that the latter was the attacking party should have gone to the jury in evidence."

The testimony of Mrs. Bailey did not go into so great a detail as to violate the rule above laid down.

2. It is further contended that the circuit judge improperly permitted the petition in the damage suit of Blanton v. Bailey, for alienating Blanton's wife's affections, to be read in evidence. This ruling, however, is not here for review, since appellant took no exception to the ruling. It has been repeatedly held that in order to enable this court to review a ruling of the circuit court, an exception must be taken thereto at the time the ruling is made. O'Brien v. Commonwealth, 89 Ky., 364; Travelers Ins. Co. v. McInerney, 119 S. W., 171; Montgomery v. Morton, 143 Ky., 796.

3. Again, it is insisted that the court should have peremptorily instructed the jury to find the appellant not guilty; and, although appellant did not ask such an

instruction, it is contended that it was the duty of the court to give it under the well recognized rule that the court must give the whole law in a criminal case. The circuit court, however, did not err in this respect, since there was abundant testimony to take the case to the jury; and, that being true, a peremptory instruction should not have been given.

4. Finally, it is insisted that the judgment should be reversed because of the misconduct of the Commonwealth's Attorney, and of other counsel for the Commonwealth, upon the trial. It is insisted, among other things, that the Commonwealth's Attorney testified, by referring to a divorce suit brought by Blanton's wife, while there was no evidence whatever upon that point; and, further, that counsel for the Commonwealth misinterpreted the instructions and misled the jury into finding a verdict of guilty. In support of this ground appellant files the affidavits of two of the jury, in which they say that they were so misled. It is not necessary to go into any of these questions, however, since appellant failed to make any objection to the remarks of counsel at the time they were made. See cases cited supra.

It is attempted, however, to bring these matters before us for review by means of the affidavits filed in support of a motion for a new trial. In Hendrickson v. Commonwealth, 147 Ky., 302, we had this precise question before us, and disposed of it in the following language:

"Counsel insist that appellant's affidavit showing that the Commonwealth's Attorney was guilty of improper argument may be considered under the rule laid down in Warren v. Nash, 24 Ky. Law Rep., 479. In that case, however, the bill of exceptions itself showed that counsel in his argument discussed matters which were not in evidence, and the court refused to stop him. And this court held that affidavits showing what was said and made a part of the record could be considered in connection with the statement contained in the bill. In the present case the bill of exceptions is silent upon the subject. It does not show that any improper remarks were used. That being true, we can not consider the alleged improper remarks of the Commonwealth's Attorney when they appear only in the affidavit of appellant."

5. It is insisted, however, that although no objection was taken to this and other like matters at the time of the trial, nevertheless appellant may bring them before

the court for review under section 281 of the Criminal Code of Practice, as amended by the Act of 1910, by virtue of which the rulings of the trial court on motion for a new trial are now subject to exceptions, and any error of the court in refusing a new trial may now be reviewed. Wilson v. Commonwealth, 140 Ky., 3. In other words, appellant claims, under section 281, supra, as now amended, that this court has the right in reviewing a criminal case upon its merits, to take into consideration rulings of the trial court upon the trial, to which no objection was made at the time, and that the correctness of the ruling may be brought to the attention of the court for the first time upon motion and grounds for a new trial. We do not so understand the practice. The amendment to section 281 was not intended to change or enlarge the powers of the circuit court in the trials of criminal cases; it only enlarged the powers of this court, by giving it the right to review the case upon the merits, and reverse if the verdict was not sustained by sufficient evidence. Before the amendment of 1910, it was uniformly held under section 281, that this court had no power to reverse a verdict of the jury and a judgment of the lower court, where there was any evidence to sustain them; while now we may weigh the evidence as in civil cases. The amendment merely gives an additional ground of review; it in no wise abrogates the method of presenting the ground.

We have carefully examined the record, and fail to find any substantial error that is prejudicial to appellant's rights.

Judgment affirmed.