## Hamilton v. Commonwealth.

(Decided June 21, 1929.)

CAUDILL & TACKETT for appellant.

J. W. CAMMACK, Attorney General, C. P. STEPHENS, E. L. ALLEN and A. J. MAY (DOUGLAS C. VEST, of counsel) for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Bill Hamilton was indicted under section 1166, Kentucky Statutes, for shooting and wounding with intent to kill. He was found guilty and his punishment fixed at one year in the penitentiary.

He has alleged six grounds for reversal. The first and fifth grounds are misconduct of the employed counsel for the commonwealth in his opening statement to the jury and in his closing argument. This misconduct has not been embodied in the bill of exceptions, and under the rule which we have often announced, we cannot consider it. Our reasons for the adoption of this rule we have set forth in Hopkins v. Com., 210 Ky. 378, 275 S. W. 881.

His second and third grounds for reversal are alleged errors of the court in the reception and rejection of evidence and rulings thereon. This shooting occurred on November 3, 1927. These men have had three difficulties. We do not know when the first two occurred, except that they occurred between the 20th of October, 1927, and the 3d of November. The court allowed the commonwealth to introduce evidence about all three of these difficulties. This Hamilton alleges was error and says that the evidence relative to these previous difficulties should have been confined to a bare statement that such difficulties had occurred, and that the details should not have been admitted. Ordinarily, this is true, but by sections

340 and 353, Criminal Code, the right of this court to reverse a judgment in a criminal case is limited to those cases where upon consideration of the whole case the court is satisfied that the substantial rights of the defendant have been prejudiced. Mere technical errors are insufficient; prejudicial error must appear. Therefore we shall briefly state what the evidence was about these three difficulties:

McCowan was a deputy sheriff. He had been appointed on October 20. Shortly thereafter he was sent to destroy a moonshine still. On his return he says he met Hamilton and that Hamilton said to McCowan in the presence of Sam Adams, who was operating with McCowan: "I told you once before not to mix in my business. You officers have got to squat. Sam, I like you, but I don't like McCowan. I don't like the looks of him. If you have got anything for me come and get me, but don't bring him around. I don't want him to threaten me or look at me." Hamilton's testimony relative to this meeting was that McCowan had not spoken to him for six or eight months. He was talking to Sam Adams; that McCowan came up and asked Hamilton if he liked him. Hamilton said, "No." McCowan then drew a pistol and pointing it at Hamilton, who was seated in an automobile, said, "Don't you move from under that steering wheel, or I'll kill you." Other witnesses on both sides were introduced relative to this difficulty, and the effect of their evidence was to support Hamilton's account of it, rather than McCowan's.

The second difficulty was unimportant. Hamilton merely passed or met McCowan in the road. Hamilton was in an automobile, and McCowan seemed to think that he was making an effort to get a pistol, and again the evidence seems to support Hamilton rather than McCowan.

The third difficulty occurred on November 3 and the evidence relative to it is sharply in dispute. According to McCowan, they met in the county road. Hamilton drew a pistol and directed McCowan to "stick 'em up." McCowan drew his pistol and fired. Hamilton returned the fire. Hamilton was struck in the shoulder. McCowan was struck in the face, just to the right of the nose, and the ball passed out just back of his left ear. McCowan fell, and the difficulty closed. According to Hamilton, when he and McCowan met, McCowan drew

his pistol, whereupon Hamilton said, "Hold up, John, don't do that." Thereupon McCowan fired and Hamilton said he returned the fire in order to protect his life. The weight of the evidence indicates that McCowan fired first. Both were wounded; neither was killed. . The question is, was the admission of this evidence of previous difficulties prejudicial error? We do not so regard it.

The intervening time between the first and second difficulty was only a few hours and the time between the second and third only about a week. The feeling between these two men had been bad for some time. McCowan had not spoken to Hamilton for six or eight months. After McCowan was appointed deputy sheriff, it seemed to go to his head. The overwhelming weight of the evidence is that at the time of the first difficulty he provoked it; that he drew his pistol on Hamilton and told him he was going to kill him, and directed others to get out of the car. The admission of the evidence relative to this difficulty was beneficial, rather than prejudicial, to Hamilton. It tended to show McCowan was the aggressor and to support Hamilton's plea of self-defense. It showed McCowan was overbearing; that he entertained malice against Hamilton and wanted to kill him, and would perhaps have killed him on the first occasion, except for the intervention of other persons present.

The happenings at the second difficulty are unimportant. Evidence was admited about the destruction of the still that really had no bearing on this case, but it did not prejudice Hamilton, because there was no evidence connecting Hamilton with the still. While evidence of other difficulties is not ordinarily admissible, where it throws light upon the main difficulty, serves to illustrate the motive the parties may have had, or the malice they may have entertained, such evidence is admissible for the purpose of aiding the jury to determine who may have been the aggressor. We conclude the defendant was not prejudiced by the admission of this evidence, and this disposes of his grounds 2 and 3, except this, which he says of ground 3 in his brief:

"The third objection raised in appellant's motion and grounds is the ruling of the court in the overruling and sustaining objection to evidence and in his admonition to the jury during the progress of the trial and upon this point we are asking the court

to give this objection due consideration together with a reading of the record.''

From our examination of this record, we have found 53 different rulings to which this may have been addressed. He surely does not expect us to extend this opinion to such length as to discuss all of these, and in his brief he has pointed out none of them in particular. His brief merely amounts to an invitation to us to read this record and see if the court did not err in some of these particulars. We usually decline such invitations. See McCorkle v. Chapman, 181 Ky. 607, 205 S. W. 682. By subdivision 2 of rule 5 of this court, it is required that briefs shall refer to the page or pages where the matter complained of may be found, and when that is not done, there is perhaps no better way to induce attorneys to observe these rules than to disregard the matters not so pointed out.

His fifth objection is directed to the self-defense instruction, which he contends leaves to the jury, rather than to him, the question of the apparent danger; but in that instruction we find these words: ''That defendant at the time believed in the exercise of a reasonable judgment that said McCowan was about to inflict death or great bodily harm upon him,'' etc. The mere citation of these words in that instruction is all we need say upon this objection.

His sixth ground for reversal is that this verict is excessive and against the evidence. There was abundant evidence to show that these men entertained malice for each other. The punishment inflicted was the lowest punishment that could be inflicted if this defendant did not do this shooting in self-defense.

From a reading of this record, it appears he made a very strong case of self-defense, but if we had seen the witnesses and heard them testify, our impression might have been different. That was a question for the jury, not for this court, and the jury having found him guilty, and there being competent evidence in the record to support that finding the judgment is affirmed.