## Curtis v. Commonwealth.

(Decided January 23, 1931.)

216

W. B. WHITE for appellant.

J. W. CAMMACK, Attorney General, GEORGE HUNT MITCH-
ELL, Assistant Attorney General, and W. C. HAMILTON for appellee.
appellee.

OPINION OF THE COURT BY COMMISSIONER DRURY—
Affirming.

About 2:30 in the afternoon of Christmas Day of
1929, Wilda Curtis slew Virgil Otis by cutting or stab-
bing him. Curtis was charged by indictment, with mur-
der, and upon his trial under that indictment was found
guilty of manslaughter and his punishment fixed at con-
finement in the penitentiary for 21 years. Upon this
appeal he insists the court erred, to his prejudice, in the
exclusion of evidence offered by him.

On January 6, 1930, the mother of the man slain
sued Wilda Curtis for $10,000 for the death of her son,
and upon his trial for murder Curtis offered to read in
evidence the petition, the answer, and the reply in that
suit. The court declined to admit the offered evidence.
Curtis having objected and excepted to that ruling now
contends that was prejudicial error. We cannot agree
with him. Mrs. Otis, the plaintiff in that suit, was not
a witness in the trial of Curtis under this indictment, and
the pleading in that case would have thrown no light
upon the issue between Curtis and the commonwealth.

Curtis complains of misconduct of one of the jurors,
which alleged misconduct consists in this, that one of the
jurors upon his voir dire examination stated he had no
partiality for or prejudice against Curtis, and accord-
ingly he was accepted and allowed to sit in the case, yet
after the trial the defendant showed that since the trial
he and his counsel had learned for the first time that
after the killing and before the trial this juror had
stated to certain parties that Curtis had had trouble with
some one in a funeral procession some years before.
This statement Curtis says was untrue and indicated this
juror had a violent dislike for and prejudice against him.
He showed by one other man this juror had said to him
that, "to his knowledge, Curtis had been a candidate for
the penitentiary for at least 20 years and that he now

had a good chance to go," and that to another witness the juror had said: "Old man Curtis has been a candidate for the penitentiary for at least 20 years and I guess he will see the penitentiary now." The juror denied making these statements relative to the candidacy of Curtis for the penitentiary, but did admit that he had said in substance: "That he had heard that Curtis had some trouble of some kind in a funeral procession some twenty years ago; but that he knew nothing of that circumstance from his own knowledge, and had no interest in a development of that circumstance if it ever happened. He did not at any time heretofore, and does not now have any feeling of bias for or prejudice against the defendant Curtis, had no personal knowledge of the crime and facts connecting him therewith for which he has been tried. That he had no acquaintance with the facts or the circumstances of the case when called for jury service therein. Had no opinion touching the guilt or innocence of the defendant Curtis, and went into the trial of the case without feeling, without bias or prejudice and free from any outside influence of any kind, and had no preconceived notions of the case of any kind."

After hearing what these and other men had to say on the question, the court properly overruled the motion for a new trial based on this ground. In the case of Smith v. Com., 100 Ky. 133, 37 S. W. 586, 18 Ky. Law Rep. 652, we affirmed a judgment where two of jurors who sat upon the case on their voir dire examinations stated they had fixed opinions based on rumors that it would require evidence to remove, but they felt that they could without regard to such opinions give the defendant a fair and impartial trial. This opinion and a number of others of like import are cited and approved in Miracle v. Com., 148 Ky. 453, 146 S. W. 1136, where we affirmed a death sentence. In view of these opinions and of section 209 of Criminal Code of Practice, we cannot feel that the action of the court was erroneous. See 35 C. J. p. 342 sec. 374. In support of his contention Curtis has cited these opinions: Gleason v. Com., 145 Ky. 128, 140 S. W. 63, Ann. Cas. 1913B, 757; Mansfield v. Com., 163 Ky. 488, 174 S. W. 16; Miller v. Com., 203 Ky. 437, 262 S. W. 579; Lee v. Com., 218 Ky. 360, 291 S. W. 749. All of which cases contain rulings upon similar questions, and every one of those rulings are adverse to

Curtis. It is true that the Miller case was reversed, but not upon this question.

The next ground relied on is the alleged error of the court in qualifying the self-defense instruction so as to deny to Curtis that defense if he voluntarily engaged in this combat or began the difficulty, but there was evidence that he did both of these things, and, if he did, then he was not entitled to justify this killing by a plea of self-defense. There was evidence that he did not do this, but it was for the jury to determine which set of witnesses was telling the truth.

The final ground urged for reversal is that the instructions given did not give to Curtis the benefit of the right of self-defense, if he had in good faith abandoned the difficulty before the killing; and the disposition of this contention necessitates a brief statement of the occurrence.

This difficulty is divided into three distinct scenes. The first took place inside of a pool room and amounted to nothing more than a display of bad temper and the use of some vile language, whereupon the proprietor of the place put them out. As soon as they got outside on the sidewalk all parties (there were four of them, two on each side) seemed willing to renew it and were actively engaged in so doing, whereupon some man with commendable thoughtfulness led Virgil Otis away and counseled him to avoid a difficulty. It is at this point that Curtis claimed that he abandoned the difficulty, and that he started away, but there is no proof that he got anywhere, for in a few moments Virgil Otis, the man who was killed, returned and met Curtis just in front of this pool room door where he had left him and offered to apologize. There is some conflict in the evidence about just what Virgil Otis said, but Curtis himself does not say anything that Otis said was insulting, but anyhow a fist fight out in the street soon followed between Virgil Otis and a son-in-law of Curtis, whereupon Curtis drew a knife, went out into the street, and attacked Virgil Otis, and in that encounter cut and killed him. We find no evidence anywhere that Curtis had at any time abandoned the difficulty.

The judgment is affirmed.