# Pennington v. Commonwealth.

(Decided Feb. 18, 1936.)

W. S. WALLEN for appellant.

B. M. VINCENT, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Convicted of the crime of manslaughter and sentenced to the state reformatory for a term of twenty-one years, Wesley Pennington is here insisting that the record requires a reversal on the grounds that the verdict of the jury is flagrantly against the evidence and the commonwealth's attorney in the preliminary statement, and the closing argument, to the jury made improper, prejudicial statements.

A consideration of the first ground requires a review of the evidence. It is conflicting. That of the commonwealth is: Crate Collins and Craynor Slone, the deceased, resided at Estill. About 5:30 p. m. of the day on which Slone was killed they arrived on the train, therefrom went to Napier's restaurant; Slone called for a bottle of beer; Napier waited on him; he drank a part of the bottle and sat it on the counter, then he and Collins went to the door and engaged in a conversation with Squire Slone. After "loafing" a few moments, they went into Mrs. Hall's place where Pennington was; Collins asked Pennington his name. He

responded it was none of his business; Collins apologized and suggested he did not want to offend him when Pennington struck him; Collins' hat fell off, he reached to pick it up and when he rose up, Pennington threw a pistol in his face; Collins turned and "backed" out the door. Craynor Slone was standing at the door and as Collins passed out, asked him what was the matter, when he informed him Pennington had hit him. Collins said to Craynor Slone: "Don't go in there, he has a gun on him." Craynor Slone and Pennington began a conversation when Pennington struck at him and instantly shot when he fell and immediately died.

A portion of the building in which the killing occurred was used by Napier as a place of business and family rooms; a portion by Mrs. Hall as a residence. The second story was occupied by James Elam and family.

A number of witnesses were present or immediately near the place of the killing, and their general statement of the tragedy is substantially the same.

Pennington, Lizzie Hall, and others testified substantially, thus: Pennington was a coal loader at the mines. He was in the habit of frequently visiting at Mrs. Hall's and spending a night. She was a widow with seven children. Mary Jackson, a part of the time, made her home at Mrs. Hall's. On the occasion of the shooting and killing Craynor Slone, Pennington was visiting at Mrs. Hall's home and had spent Friday night thereat. He claims that Collins came into Mrs. Hall's home, stated to him that he knew him, and repeated his statements three or four times; "just kept saying that"; when he responded, "That is alright, go on away and don't bother me this way, I don't know you"; Collins walked away and directly he and Craynor Slone came back and Collins again stated, "Don't I know you?" Pennington remarked: "I told you a while ago that I didn't know you," and when he made this statement to Collins, Collins responded: "You are a D—— liar, you do know me," and clinched with Pennington, and while they were clinched Craynor Slone struck at Pennington, hitting him "by the side of the eye," knocking him down, across a rocking chair, and began hitting him in the face, when he (Pennington) got a pistol out of his pants' pocket and shot Slone, to avert danger at the hands of Slone.

Such conflicting evidence authorized the submission of the case to the jury.

"The question of his guilt was one peculiarly within the the province of the jury. We are forbidden from reviewing the evidence to determine if it justifies a conviction (Cornelius v. Com., 54 Ky. [15 B. Mon.] 539); nor is it our province to pass upon the facts other than determine whether there is any evidence to support the verdict (Cornett v. Commonwealth, 156 Ky. 795, 162 S. W. 112), unless the verdict is manifestly wrong or palpably against the weight of the evidence (Miller v. Com., 231 Ky. 527, 21 S. W. [2d] 840; Ritchie v. Commonwealth, 243 Ky. 479, 48 S. W. [2d] 1072), and, if there is any evidence affording grounds on which the jury's verdict might be sustained, it is considered neither wrong nor palpably against the weight of the evidence Newsome v. Commonwealth, 240 Ky. 333, 42 S. W. (2d) 306; Barton v. Commonwealth, 240 Ky. 786, 43 S. W. (2d) 55; Tussey v. Commonwealth, 241 Ky. 91, 43 S. W. (2d) 351."

Bullock v. Commonwealth, 249 Ky. 1, 60 S. W. (2d) 108, 111, 94 A. L. R. 407.

Viewing the evidence most favorable to Pennington and adhering to these general rules, we are not prepared to say that the verdict of the jury is against the weight of the evidence.

The record contains the whole of the preliminary statement of the commonwealth's attorney to the jury, made under authority of section 220, Criminal Code of Practice. It also contains his closing address to it. An examination of the record respecting both the preliminary statement and the closing address discloses no word or syllable of either was objected to by the defendant as and when the same was made or at the close thereof, nor until the filing of his motion and grounds for a new trial. Indeed, his brief fails to point out that portion of either the statement or the address to which he now objects. He contents himself with this statement:

"The whole tenor of his speech was that the jury should make an example out of this case in order to stop the commission of other crimes in the county. His opening statement as well as his final ar-

710

gument was highly prejudicial to the substantial rights of the defendant below."

Having failed to object to either as and when made, or after the same was made, and before filing his motion and grounds for a new trial, his objection thereto in his motion and grounds for a new trial and in his brief herein is too late to avail him even if either statement or argument, in whole or in part, was objectionable.

Wherefore, the judgment is affirmed.