## Chism v. Commonwealth.

Feb. 7, 1941.

W. A. Barry for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

The appellant, Grover Chism, was convicted of the murder of Schuyler McClure and sentenced to death. He seeks a reversal of the judgment. on four grounds: (1) He was not given sufficient time within which to prepare his defense; (2) the verdict was the result of prejudice against him on the part of the jury; (3) incompetent evidence was introduced against him; (4) the court failed to give the whole law of the case in its instructions.

At the time of the homicide appellant was 47 years old and was a farm laborer residing in the neighborhood of a store owned by McClure, who was 68 years of age and not in good health and had largely turned the operation of the store over to his wife and daughter. On Saturday before the tragedy, which occurred on Tuesday, October 31, 1939, Chism had cashed a forged check for $8.60 at the McClure store. It was testified by Chism that he had heard the officers were looking for him Monday night, so he decided Tuesday morning to go to Elizabethtown and surrender on the check charge. He drove to Elizabethtown Tuesday morning, but instead of surrendering to the officers he drank a half a pint of whisky and in addition purchased a quart before returning home. The previous day he had a half a pint of moonshine whisky which was so bad he could not drink it and threw it away. It appears from his testimony he found this moonshine whisky Tuesday morning and also consumed it.

Chism testified he thought he ate dinner Tuesday, after which he got his car and shotgun and started squirrel hunting. Soon after starting out in his car he failed

to make a bend in the road, ran into a field and damaged the running board of the car. John Peyton came to his assistance; drove him to the highway and he went to Skees' woods where he hunted for a while, but finding no squirrels he started home. Thinking Will Miller owed him some money, he decided to go there and collect it. Then he recollected Miller had paid him and in trying to turn his car he got it crosswise of the road and some people in a passing car straightened him up. Thereupon he started to the McClure store to redeem the check he had cashed there the previous Saturday. He had his quart bottle with him, from which he was drinking, and the last he remembers was when he turned to the right at Craig's roadhouse, which is about half a mile from the McClure store. He hardly knew McClure, there had been no trouble between them, he had no reason to shoot him and does not remember doing so. Chism testified that after passing Craig's roadhouse, he remembered nothing that happened until somebody struck him in the face while he was in the sheriff's car.

No witness, other than the defendant himself, was introduced in his behalf. However, John Peyton, who was put on the stand by the Commonwealth, testified appellant was drunk when he helped him with his car and that he had some liquor in the car at that time.

The testimony for the Commonwealth was that Chism came to the McClure store around 6:15 P. M. on the day of the tragedy and asked Bob Copelin what he was going to do about the check, to which Bob replied "nothing." He then insisted on Bob using his car to push appellant's car so it would start, but Bob said his bumper was broken and he could not push him. Then Copelin, Will and Ernest Cross and McClure went out in front of the store to Copelin's car. Shortly thereafter Chism, armed with a shotgun, came to the car where these men were and punched McClure in the side with his gun, saying, "Come in here, God damn you, I come to kill you and I am going to kill you." Also, he pointed the gun at Ernest Cross with the same threat. Ernest and McClure walked into the store, did not stop, but passed on through to McClure's dwelling a short distance to the rear of the store. Discovering Chism was following them, McClure entered his home and Cross jumped behind a tree. McClure opened the door of his house some six or eight inches, whereupon Chism fired

his shotgun from a range of about twenty feet which took effect in McClure's abdomen, from which he died the following day.

From the time Chism arrived at the store until the tragedy, McClure did not address a word to him—nor had there been any previous trouble between these two men. Ernest Cross, Miss Nola McClure (a daughter of the deceased) and Everett Saltsgaver, all of whom were in the store on the occasion of the killing, testified appellant appeared to be drinking but that he was not drunk. As Miss Nola expressed it, "He appeared to be drinking like a person who had a drink or two; he was not drunk because he was not staggering; he didn't look to be drunk. He seemed to know everything he was saying and doing." Willard Brawner, who saw appellant about thirty minutes after the shooting, testified he could have had a drink or two but was not drunk. J. S. McMurtry, the jailer of Hardin county, testified that when brought to the jail about 7 o'clock on the night of the tragedy, one could tell appellant had some drinks, but he could walk straight, talk coherently and understood what was said to him.

This killing occurred October 31, the indictment was returned on November 15, and the trial was on December 18, 1939. Appellant made no motion for a continuance, announced ready when the case was called for trial and his first claim that he was entitled to a continuance is made in his motion for a new trial. His failure to move the court for a continuance waived any right he might have had thereto. Errors are waived if presented for the first time in the motion for a new trial. Logsdon v. Com., 12 S. W. 628, 11 Ky. Law Rep. 550; Blanton v. Com., 147 Ky. 812, 146 S. W. 10; Steele v. Com., 199 Ky. 760, 251 S. W. 1014; Smith v. Com., 258 Ky. 482, 80 S. W. (2d) 565; Fowler v. Com., 260 Ky. 433, 86 S. W. (2d) 148; Pennington v. Com., 262 Ky. 707, 91 S. W. (2d) 21.

In support of the second ground appellant's attorney filed an affidavit to the effect that he had information that a juror, T. O. Coffer, had made a statement that if selected as a juror to try appellant, he would give him the death penalty. The trial judge thoroughly went into this question on the hearing of the motion for a new trial and witnesses were produced and testified orally before the court. It developed that Coffer had

made no such statement. The rumor that he had was the merest hearsay and no witness testified to hearing Coffer make any such statement or to hearing him say anything which was prejudicial to appellant. Coffer himself testified on the hearing of the motion for a new trial and denied he had made such a statement. While a juror is not a competent witness to impeach a verdict, he is competent to testify in support thereof. Section 272, Criminal Code of Practice; Gleason v. Com., 145 Ky. 128, 140 S. W. 63, 128 Ann. Cas. 1913B; 757; Wolf v. Com., 214 Ky. 544, 283 S. W. 385.

Appellant's brief does not point out any incompetent evidence which was introduced against him but merely invites us to search the record for such. We have written many times we will not do this. Shelton v. Com., 280 Ky. 733, 134 S. W. (2d) 653; Lowery v. Com., 191 Ky. 657, 231 S. W. 234; Brandriff v. Com., 227 Ky. 389, 13 S. W. (2d) 273; Hamilton v. Com., 230 Ky. 207, 18 S. W. (2d) 995. Appellant's brief does not argue this point. It appears to have been merely formally included in the motion for a new trial and not being argued in the brief, it is waived. Hall v. Com., 242 Ky. 717, 47 S. W. (2d) 538; Dorroh v. Com., 236 Ky. 68, 32 S. W. (2d) 550; Chapman v. Com., 234 Ky. 681, 28 S. W. (2d) 977.

Lastly, a reversal is asked because the court did not instruct that although voluntary drunkenness is no excuse for crime, the jury might consider it as affecting appellant's mental condition in determining whether he was acting maliciously or without malice and in sudden heat of passion. In the very recent case of Richardson v. Commonwealth, 284 Ky. 319, 144 S. W. (2d) 492, decided Oct. 4, 1940, this question was thoroughly discussed and it was there held that the defendant indicted for murder was not entitled to an instruction on drunkenness and the trial court erred in favor of Richardson in giving such an instruction. The rule stated in the Richardson case is that where the intent or purpose is an element of the crime charged, evidence of accused's drunkenness is admissible to show absence of intent, and if the effect of such evidence is to lessen the offense, the accused is entitled to an instruction on the lesser and included offense without having the evidence of drunkenness singled out in the instruction; but if evidence of drunkenness would not reduce the offense, or

tend to establish a lesser or included offense, but would result in defendant's acquittal, a specific instruction on the legal effect of drunkenness should be given. Here drunkenness would not entitle Chism to an acquittal, but could only have reduced his offense from murder to voluntary manslaughter, which latter offense was included in the court's instructions, therefore the court properly refused to give a specific instruction upon the legal effect of appellant's drunkenness.

Finding no error in the record, the judgment is affirmed.

Whole Court sitting, except Judge Perry.