## Donehy & Prather v. Commonwealth.

(Decided May 31, 1916.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

1. Criminal Law—Reading Indictment to Jury—Section 219 Criminal Code.—The purpose of section 219 of the Criminal Code requiring the clerk or Commonwealth's attorney to read to the jury the indictment and state the defendant's plea is to inform the jury at the inception of the trial the nature of the charge and the plea of the defendant, and when the clerk has read the indictment and the defendant in person has entered a plea of not guilty, although neither the clerk nor the attorney for the Commonwealth has stated to the jury the defendant's plea, there has been a substantial compliance with the Code provision.

2. Criminal Law—Instructions—Evidence.—Evidence examined and held to authorize the giving of an instruction on murder.

3. Criminal Law—Killing Officer in Resisting Arrest—Murder.— Where an officer is killed while attempting to make an arrest by one knowing him to be an officer it is not necessary to constitute murder that the slayer should have had any particular malice.

4. Criminal Law—Killing Officer in Resisting Arrest—Instructions. —An instruction on self-defense which stated to the jury that an officer in attempting to make an arrest had the right to use such force as appeared to him to be reasonably necessary to accomplish his purpose, and that if the defendants knowing he was an officer and attempting to arrest them resisted arrest and in doing so

killed him or aided and abetted in such killing they could not be acquitted on the grounds of self-defense, while not technically correct was not prejudicial under the facts of this case.

5. Criminal Law—Resisting Officer—Force Officer May Use.—An officer has no right to wantonly shoot or kill one charged with a misdemeanor if the offender is merely trying to escape arrest by flight, but if the offender be armed and offers forcible resistance or threatens the officer and in connection with such threat assumes a menacing attitude, the officer then may use such force in the exercise of a sound judgment as is necessary to make the arrest, not only for the purpose of bringing the offender to justice, but to protect himself from threatened danger.

6. Criminal Law—Resisting Officer—Instructions.—An instruction which told the jury that if they believed from the evidence the defendants did know that the person who attempted to arrest them was an officer and was attempting to arrest them and they did not forcibly resist such arrest and the officer assaulted them or either of them with a pistol and that they had reasonable grounds to believe from his conduct that they were in danger of death or great bodily harm and that it was necessary or appeared to them in the exercise of a reasonable judgment to be necessary in order to avert such danger to shoot the officer then they would find the defendants not guilty, was equivalent to an instruction that they had the right to resist arrest if it was undertaken by the officer in an illegal way.

7. Criminal Law—Discretion of Officer in Custody of Criminals.—It is within the sound discretion of an officer in custody of a criminal, taking into account the nature of the offense charged and the character and disposition of the offender; to place handcuffs on him when he is taken to and from, the court room in the presence of the jury during the trial.

O. M. ROGERS and R. S. HOLMES for appellants.

M. M. LOGAN, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TURNER.—Affirming.

In August, 1915, Elmer C. Matthews was a railroad policeman in the employ of the C., N. O. & T. P. Ry. Co. He had been appointed and commissioned under the provisions of Sec. 779a, Kentucky Statutes, and as such officer was clothed with the power and authority of a sheriff upon the trains of the company or about its depots.

On the 18th day of August early in the afternoon there was made up in Cincinnati by the C., N. O. & T. P. Ry. Co. a freight train which proceeded across the river on its south bound journey; at Ludlow immediately across

the river from Cincinnati this train was boarded by Matthews, the railroad policeman, and when the train got a short distance south of Ludlow he discovered in one of the gondola cars of the freight train, which was loaded with gas pipe, two negro men, afterwards identified as the appellants, Donehy and Prather.

The train at the time was going up a steep grade and running at the rate of only from four to ten miles an hour; Fleming, the brakeman, was then on the same car that Donehy and Prather were riding in and Matthews boarded the car at the northeast corner. As he did so Donehy jumped up, whereupon Matthews asked where they were going, when one of them said they were going "down the road," and they were then informed by Matthews that they could not ride on that train; Donehy as he got up had his hand in his right coat pocket on his pistol; Matthews asked him to take his hand out of his pocket and he refused, and Prather at about that time said: "Wait a minute, he is not going to put you off;" Matthews then advanced toward Donehy with his pistol presented at him and demanded that he take his hand out of his pocket and Donehy still refused, and when Matthews got up to where Donehy was he grabbed hold of the hand which he had in his pocket on the pistol, and struck him with his pistol on the left side of the head and Donehy with his left hand grabbed Matthews' right hand; Fleming started to go to the assistance of Matthews when Prather fired twice at him, whereupon Fleming, being unarmed, jumped off the car; just after he jumped off the car he heard seven, eight or ten shots, ran along the side of the train and got on a car further forward, when he looked back and saw the two negroes leaving the train going in a westernly direction. The body of Matthews was found in the car with four bullet holes in his back and two in his right side, having been instantly killed. Several months later the two appellants were arrested and indicted charged with the murder of Matthews, and upon their joint trial were each found guilty and sentenced to confinement in the penitentiary for life, from which judgment they prosecute this appeal.

Their defense in the lower court was an alibi, they each claiming that they were not present in the car at the time and that they were not the men who engaged in the difficulty with Matthews. It is sufficient to say on this subject that the plea was a complete failure; they

were identified positively by Fleming the brakeman; by a farmer who saw them a short distance from the train just after they had left it, and whom they told they had been fired upon by a detective; they were identified by the man who set them across the Ohio river that afternoon, and in addition to all of this there was the evidence of three or four witnesses showing certain admissions by one or both of them.

The appellants, however, are relying upon five grounds for reversal: First, because the attorney for the Commonwealth in his statement to the jury failed to state what was the plea of the defendants; second, that there was no evidence authorizing an instruction on murder; third, that the instruction on self defense was erroneous; fourth, because of the failure of the court to give the whole law of the case; and, fifth, because the sheriff and his deputies during the trial brought appellants into and took them from the court room handcuffed in the presence of the jury.

1. On the first proposition the record shows that the defendants were arraigned by the clerk reading to them the indictment, after which they were each asked for their plea and they each entered a plea of not guilty, whereupon the attorney for the Commonwealth read the indictment to the jury, but failed to state to the jury that the defendants pleaded not guilty.

Section 219 of the Criminal Code of Practice requires the clerk or the attorney for the Commonwealth to read to the jury the indictment and state the defendant's plea, and while this provision has been held to be mandatory, a substantial compliance with its provisions only is necessary. It is true that literally neither the clerk nor the attorney for the Commonwealth stated the plea of the defendants to the jury, but they themselves after the reading of the indictment by the clerk and before the statement of the Commonwealth's attorney entered in the presence of the jury their plea of not guilty.

The purpose of this code provision is to inform the jury at the very inception of the trial the nature of the charge and the plea of the defendants, and when this has been done in the manner indicated, the code provision, while not literally followed, has been sufficiently complied with. Combs v. Commonwealth, 31 Rep. 822; Meece v. Commonwealth, 78 Ky. 586; Howard v. Commonwealth, 24 Rep. 91.

2.   The second contention of appellants that there was no evidence justifying the giving of an instruction on murder is without merit.

Matthews was an officer and that appellants knew him to be such is apparent; he had on his badge and they immediately after the shooting referred to him in their talk with the farmer whom they met as *the detective,* and in all the conversations showing admissions by them, detailed by several witnesses in the record, they referred to him as *the detective* or as *the railroad detective.* Knowing him to be a detective when he notified them that they could not ride on that train Donehy immediately assumed towards the officer a menacing attitude by placing his hand in his pocket on his pistol, the handle of which was showing, and declined more than once to take his hand out of his pocket. Prather after the demand by the officer that Donehy should take his hand off of his pistol said to Donehy in the presence of the officer: ''He will not put you off,'' and drew his pistol and fired two shots at the brakeman who undertook to go to the relief of the officer. Thus it is seen that they each committed an offense in the presence of the officer, one the offense of carrying a concealed weapon which he had started to draw on the officer, and the other defying the authority of an officer by saying to him in substance that he could not put them off the train and drawing his weapon to enforce that threat and to prevent another from aiding the officer.

It is true that there was no eye witness to the actual killing and the brakeman only saw the first two shots which were fired at him; but within a very few minutes the two men were seen to leave the car and run off through the fields and immediately thereafter the dead body of Matthews was found in the car with four bullet holes in his back and two in his right side.

Even if there had been no other evidence except that of the brakeman and the finding of the body with the six bullet holes in it and their location, there would have been ample justification in submitting to the jury an instruction on murder; but in addition to this evidence there is that of some two or three other witnesses who testified to admissions made by the defendants at different times showing that they shot the decedent with his own pistol after having taken it from him and that he begged them not to kill him.

It is true there is no evidence that Matthews notified the defendants that he was an officer or that he in terms said to them he intended to arrest them; but as already stated the evidence shows that they knew he was an officer, and the facts stated by Fleming unmistakably showed Matthews' intention to arrest them and that they knew of such intention.

It has long been the rule in this State that where an officer is killed while attempting to make an arrest by one knowing him to be an officer it is not necessary to constitute the crime of murder that the slayer should have had any particular malice. Dilger v. Commonwealth, 88 Ky. 550.

3. The first objection to the instruction on self defense is that it tells the jury it was the duty of the appellants to submit to an arrest at the hands of Matthews if they knew he was an officer and was attempting to arrest them. It is argued that this was unauthorized because there was no evidence that they knew he was an officer or that they knew he was undertaking to arrest them; but we have already seen from a statement of the facts that there was evidence that they knew he was an officer and that the facts showed that he was attempting to arrest them.

It is also objected that the concluding paragraph of that instruction, which said to the jury in substance that the officer in attempting to make the arrest had the right to use such force as appeared to him to be reasonably necessary to accomplish such purpose, and that if the defendants, knowing he was an officer and attempting to arrest them, resisted arrest and in doing so shot and killed him, or aided or abetted in such shooting and killing, then they could not be acquitted on the ground of self defense.

The distinction has been frequently pointed out by this court between the rights, power and authority of an officer attempting to make an arrest for a misdemeandor in cases where there is forcible resistance by the offender and in cases where there is only an effort to escape by fleeing. Manifestly an officer has no right to wantonly shoot or kill one only charged with a misdemeanor if the offender is merely trying to escape such arrest by flight; but if the offender be armed and offers forcible resistance or threatens the officer and in connection with such threat assumes a menacing attitude towards the officer, the offi-

cer then may use such force in the exercise of a sound judgment as is necessary to effect the arrest, not only for the purpose of bringing the offender to justice, but to protect himself from threatened danger. Commonwealth v. Marcum, 135 Ky. 12; Stephens v. Commonwealth, 104 Ky. 32; Reed v. Commonwealth, 125 Ky. 126.

While the instruction in this case did not point out the distinction which has been taken in the cases referred to it could not have been prejudicial in this case for the reason that all the evidence showed that both of the appellants at the time of the attempted arrest were armed, that they resisted arrest and in such resistance drew their pistols, and in effect defied the officer.

4. It is complained by appellants that the court did not give the whole law of the case because of its failure to instruct the jury that the appellants had the right to resist the attempted arrest by Matthews if the jury believed from the evidence the arrest was undertaken in an illegal way.

It is unnecessary to consider this contention at length, for whether such an instruction was authorized by the evidence or not, the idea contended for was embraced in one of the instructions given wherein the jury was told, in substance, that if they believed from the evidence that the defendants did know that Matthews was an officer and was attempting to arrest them and did not forcibly resist such arrest and that Matthews assaulted them or either of them with a pistol and that they had reasonable grounds for believing from his conduct that they or either of them were in danger of death or great bodily harm and that it was necessary or appeared to them in the exercise of a reasonable judgment to be necessary in order to avert such danger to shoot Matthews then they would find such defendant not guilty on the ground of self defense.

But in any event the statement of the evidence above given shows that there was no basis in the evidence for any such instruction.

5. Finally it is contended that because the sheriff and his deputies during the progress of the trial brought the two appellants into the court room and took them therefrom handcuffed the judgment should be reversed because such conduct strongly tended to prejudice the jury against them.

The sheriff while conducting prisoners to and from court was their proper custodian, and was responsible for their delivery to the court and back to the jail. Such officers have all kinds of criminals to deal with; they have not only the most dangerous and desperate criminals charged with such crimes as would give them an incentive to take any desperate chance to escape, but they are also the custodians of the most harmless and inoffense offenders whose nature and disposition is such, or the charge against whom is such, that little inducement is offered them to undertake to escape or to do harm to others. Under such circumstances it would be most unreasonable to say that a public official charged with the responsibilty of delivering prisoners to the court and returning them to jail should not be given the right to exercise some discretion in handling his prisoners. It would be unfair to the officer to say that he must treat a desperate and dangerous criminal in the same way and give him the same opportunity to escape or to do injury to others as he would an inoffensive prisoner charged with a less serious offense.

As said in Firestone v. Rice, 71 Michigan 377, "some discretion must be reposed in an officer in making an arrest for felony as to the means taken to apprehend and safely keep the prisoner. In order to justify handcuffing a person arrested for felony it is not necessary that he should be unruly or attempt to escape, or to do anything indicating a necessity for such restraint, nor in the absence of these indications that he should be of notoriously bad character." Also Edgar v. Barker, 96 Maryland 726.

We entertain no doubt that it is within the sound discretion of an officer in custody of criminals, taking into account the nature of the offense charged and the character and disposition of the offender, to place handcuffs on him when he is taken to the court from the jail for trial.

Judgment affirmed.