# Hall v. Commonwealth.

(Decided March 11, 1932.)

JAMES & HOBSON, F. M. BURKE and O. C. HALL for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Greenbury Hall was indicted in the Floyd circuit court for the murder of Edgar Boyd, and on the trial of the case was found guilty of voluntary manslaughter and his punishment fixed at confinement at hard labor in the state reformatory at Frankfort, Ky., for the period of 19 years.

The appellant's motion and grounds for a new trial being overruled, he prosecutes this appeal, seeking the reversal of the judgment.

It appears that in this case the appellant was first indicted at the September, 1930, term of the Floyd circuit court for the murder of Edgar Boyd, to which appellant pleaded not guilty and entered a motion for bail, which was overruled. On November 5, 1930, this indictment was, on motion of the commonwealth, quashed, and the case resubmitted to the grand jury, which again returned an indictment charging the appellant with the murder of Edgar Boyd, committed in Knott county, Ky., and to this indictment a general demurrer was filed, which was overruled by the court when a plea of not guilty was entered.

On November 24, 1930, the case coming on for trial and a jury being impaneled and sworn to try the cause, and after making the opening statement thereof, it was discovered that the indictment was defective in having its venue laid in Knott county. The court, over the objection and exception of the appellant, sustained the motion of the commonwealth to quash the indictment, and resubmitted the case to the grand jury, when, on the following day, November 25, 1930, a new or third indictment was returned against the appellant, charging him as in the first indictment.

To this indictment, the appellant pleaded not guilty and also entered the special plea of former jeopardy, to which the commonwealth demurred.

The court, sustaining the demurrer and overruling the special plea, ordered the case to proceed to trial, when the same jury which had been accepted by both sides to try the second indictment, which was quashed the previous day, was again impaneled, over defendant's objection, to try the cause.

This jury, upon being unable to agree, was discharged.

The case again coming on for trial on January 26, the court, over the objection of defendant, sustained the motion of the commonwealth to secure a jury from Pike county, which was summoned by its sheriff.

On January 27, 1930, the appellant entered a motion that the panel summoned from Pike county be set aside, on the ground that it was not summoned, as required by the Criminal Code of Practice. This motion being over-

ruled, and, the cause thereupon being tried, resulted in the jury's returning a verdict against the appellant, finding him guilty of manslaughter and fixing his punishment at confinement in the penitentiary for 19 years, when judgment was thereupon entered, sentencing appellant to be confined at hard labor for the period of 19 years in the state reformatory at Frankfort.

Appellant thereupon filed motion and grounds for a new trial, assigning some ten grounds of error therein complained of, which being overruled, he has prosecuted this appeal, seeking a reversal of the judgment.

From the evidence it appears that there had been some trouble between the decedent, Edgar Boyd, his father, Jerry Boyd, and the appellant, Hall, for some three months prior to the killing of Edgar Boyd by the appellant on the night of October 3, 1930; that the decedent, Edgar Boyd, and his father, Jerry Boyd, were blamed by the appellant for his arrest and imprisonment on charges of drunkenness and fornication and being later put under bond for keeping the peace, all occurring just shortly prior to this killing. The evidence shows that on Friday, October 3, 1930, the appellant was released from jail and returned to his home about 3 or 4 o'clock, after being in jail some two or three weeks, there imprisoned with Nina Hamilton upon a fornication charge, upon which he had been arrested the day following his release from jail upon a drunkenness or whisky charge, and that he blamed the Boyds, father and son, with having caused his arrest and imprisonment in each case, and that, upon his release and return home on this day of October 3, he was then seeking to arrange for securing bond in some further case, or criminal charge, pending against him, with which he also blamed and accused Jerry Boyd and the deceased, Edgar Boyd, with causing.

On Friday night, October 3, 1930, John Hall, a near neighbor of both appellant and decedent, was giving a "candy party" at his home at Amba, Ky., where, among a number of young people present, there were Albert Hamilton, the deceased Edgar Boyd, and Woodrow Conn; that Edgar Boyd came to Hall's house shortly after dark, where he was soon joined by the others and where the party seemed to progress favorably until between 10 and 11 o'clock, when the appellant, a married

man of family, some 50 years of age, came into the room where the guests were assembled, laid or threw his hat in the corner, and proceeded to dance around the floor with John Hall, his host. It further appears that the appellant, Greenbury Hall, on this night in question, left his home about 10 o'clock, with the announced purpose of walking over to the home of his son, Bert Hall, who lived a short distance away and beyond John Hall's. His route, in going to his son's home, took him by the home of John Hall, where, discovering a party was in progress, he stopped in. It further appears that the appellant, when leaving his home to go to his son's house, carried his shotgun along with him because his route to his son's carried him by the home of the Boyds, with whom he was at outs and quarreling, and he states that he carried his gun because he was afraid to pass the home of the Boyds without being protected; also, that, when he stopped for the party at John Hall's, he first deposited his shotgun in John Hall's coalhouse before entering the house for his "skipping and dancing" at the party.

It further appears that, when the appellant decided to attend the party and entered Hall's house, Albert Hamilton, Edgar Boyd, and Woodrow Conn were not at the time present, but shortly returned, and it appears upon their return greetings were exchanged between them and the defendant.

It further appears that this rather aged participant in the party confined his "skipping and dancing" to his host, John Hall, or perhaps, as he states, Albert Hamilton was also favored in being chosen as a partner for a dance. After a bit of this dancing around by the appellant, he was told by Albert Hamilton to sit down, when appellant, whether receiving the remark as a reprimand or request, smacked Hamilton in the face, knocking a cigarette from his mouth. Appellant describes his action as a form of joking used by him with Hamilton, though Hamilton and his friends, the deceased Edgar Boyd and Woodrow Conn, appeared to interpret the smacking a different way and walked from the room to the back of the house, followed by several of their other friends, where they talked for several minutes, when, according to the evidence, upon the advice of John Hall, given with the view of averting trouble, they left the party to go to Conn's home nearby, away from the appellant, whom

some of these witnesses describe as then appearing mad and acting somewhat queerly.

It also appears that about an hour before the killing, the deceased Edgar Boyd borrowed a pistol from his host, John Hall, who states, however, that it was returned to him by Boyd some while before the killing.

Within a very few minutes after Albert Hamilton, Edgar Boyd and Woodrow Conn had withdrawn from the front room, where they left the appellant, he left the house and went to the coal shed where he had left his gun, secured it, and, on meeting Hamilton, the decedent, and Conn as they came around the corner of the house, appellant fired on Edgar Boyd, hitting him in the stomach, from which injury within an hour, or a very short while thereafter, he died.

The appellant was also hit in the hand and arm by two bullets fired from a pistol at practically the same time at which Boyd was shot; an issue was thus made of self-defense, and the question was whether appellant shot the deceased before or after he was fired on or threatened with being shot.

After killing Boyd, the appellant went to his home and was arrested the following day, while lying in some weeds near his home.

The evidence was very conflicting, many of the witnesses introduced by the commonwealth stating that the shotgun was first fired, the pistol shots coming after them, while appellant and his family, kinsmen, and some other witnesses state that they heard the pistol shots first and then followed the gunshot. The jury, upon this conflicting testimony, found the defendant had shot and killed the deceased, Edgar Boyd, not in his self-defense, and returned a verdict, finding him guilty of manslaughter.

Appellant in his brief has urged and argued three grounds of complaint upon which he asks a reversal of the judgment, and we will confine our consideration of his appeal to the points herein urged by him, treating the other grounds assigned as error in his motion for a new trial as being upon his appeal abandoned and waived by him.

Appellant insists that the judgment appealed from cannot be sustained, and presents his argument in support of his contention in the following order:

(1) Instruction No. 4, the self-defense instruction, was erroneous, and cannot be sustained.

(2) Incompetent evidence, to the prejudice of the substantial rights of appellant, was permitted to be introduced, over his objection and exception.

(3) The court, over appellant's objection and exception, permitted counsel for appellee, in the concluding argument, to make improper, prejudicial, and inflammatory statements to the jury, and, hence, appellant's motion to set aside the swearing of the jury should have been sustained.

These grounds of objection we will consider and dispose of in the order presented.

First, appellant complains that instruction No. 4 was erroneous and prejudicial to appellant because of the use of the word "avoid" therein. The instruction given was as follows:

"Although the jury may believe from the evidence beyond a reasonable doubt that the defendant shot and killed Edgar Boyd as described in Instruction No. 1, or in Instruction No. 2, yet, if you believe from the evidence that at the time he so shot and killed him, the said Edgar Boyd, Woodrow Conn, and Albert Hamilton, or either of them was about to inflict death or great bodily harm upon the defendant, or that the defendant in good faith so believed, exercising a reasonable judgment, and that there was no other safe means or to defendant apparent safe means of avoiding or warding off such danger or such apparent danger except to so shoot, wound and kill said Boyd, you will acquit the defendant on the ground of self-defense or apparent necessity."

Appellant contends that the use of the word "avoid" herein in effect instructed the jury that appellant had no right of self-defense, if he could avoid the danger by fleeing.

We deem it a sufficient answer to this argument that the phrase used in the self-defense instruction herein,

"or to defendant apparent safe means of avoiding or warding off such danger," is the same identical self-defense instruction which was approved by this court in its opinion rendered upon the second appeal of the very recent case of Caudill v. Commonwealth, 239 Ky. 712, 40 S. W. (2d) 334, wherein the court, in its opinion delivered by Judge Dietzman, said:

> "The judgment on the former appeal was reversed because the self-defense instruction embodied by the use of the word 'escaping' the idea that appellant, in order to avail himself of the right of self-defense, had 'to retreat to the wall.' On the second trial, the court eliminated the word 'escaping' from the instruction and substituted in lieu thereof the word 'avoiding.' While it would have been better for the court to have followed the time-honored form of a self-defense instruction as may be found in Hobson on Instructions, sec. 758 et seq., it has been expressly held that the form in which the instruction was given and the use of the word 'avoiding' instead of 'escaping' is not erroneous. Connor v. Commonwealth, 118 Ky. 497, 81 S. W. 259, 26 Ky. Law Rep. 398. The court complied with the orders of this court on the former appeal as to what should be embodied in this instruction concerning appellant's right of defense of his habitation. If he wished to have that elaborated, he should have so requested on the former appeal. Failing in that, he cannot now complain of the instruction given as directed by the former opinion."

Ground 2 relied upon by appellant for reversal is that incompetent evidence, prejudicial to the substantial rights of appellant, was permitted to be introduced over his objection and exception. As instances of such incompetent evidence prejudicially admitted, he refers first to a portion of the testimony of John Hall, wherein he was asked by the commonwealth:

> "Q. I believe you say Boyd had fallen on the ground before the pistol shot fired? (Defendant objects.)
> "The Court: Overruled. (Defendant excepts.)
> "A. Yes, sir."

Appellant complains that same was incompetent because the question was so leading as *to put in the mouth* of the witness the very answer counsel desired.

The record shows that the witness, John Hall, had just been questioned and answered as follows:

"Q. Did you hear some shots? A. Yes, two after the shotgun fired.

"Q. How long after it fired? A. Two or three seconds.

"Q. When was it with reference to the time you saw Boyd fall to the ground? A. About the time he fell on the ground I heard them fire."

To these questions and answers no objection was made by appellant, and as the question appellant now objects to referred to this direct testimony he had just offered, under such circumstances we deem it, even if improper in the leading form asked witness, was not of such prejudice to appellant's substantial rights as to justify a reversal of judgment.

Again objection is made by appellant to the incompetent evidence given by witness, Spicey Roberts, at the time objected and excepted to by appellant as such. This testimony of Roberts objected to was concerning a conversation had with appellant while they were both in jail, about a week before he killed Edgar Boyd:

"Q. Tell the jury what Greenbury Hall said with reference to Edgar Boyd? (Defendant objects.)

"The Court: Overruled. (Defendant excepts.)

"A. He says, 'this is awful,' says, 'this woman being cripple over Edgar' and went on and said Jerry Boyd is the biggest tattler in our neighborhood.

"Q. What did he refer to when he said 'this is awful'? A. Nina Hamilton getting her leg broke.

"Q. What else? A. He said, it wasn't all over yet.

"Q. Did he refer to Edgar? A. He said Edgar. He went on and said Jerry Boyd is the biggest tattler in our neighborhood.

"Q. Start at the beginning and tell what the conversation was? A. He was standing there where Nina was at. He said, 'This is awful, her getting her leg broke' and says, 'Edgar is the cause of it all and

Jerry Boyd is the bigest tattler in our neighbor-hood'."

This testimony was given by the witness regarding the statements made by Greenbury Hall when in jail with Nina Hamilton, where both were imprisoned under charges of fornication made against them by Edgar Boyd, and was allowed to be introduced by the court.

Appellant complains that the court did not, at the time of the introduction of this evidence, admonish the jury for what purpose it could be considered, and that its failure to do so left the jury to consider the evidence as substantive testimony.

Also, appellant complains that the father of the deceased was permitted to testify at great length concerning difficulties between him and the appellant and relative to trouble between appellant and his family. Without extending in detail the testimony of Jerry Boyd, the decedent's father, it is sufficient to say that it tended to show that the appellant blamed the Boyds, father and son, with too much interest and activity in his family affairs and quarrels and also blamed them with his arrest and imprisonment in connection with these matters; also he testified as to the threats made by the appellant against Edgar Boyd, as testified to by Spicey Roberts and also state of feeling had by appellant towards the Boyds, both father and son, which evidence was allowed to be introduced by the court for the sole purpose of bearing upon the feeling and attitude of the appellant towards the decedent.

The court, having admonished the jury with reference to the character of this evidence complained of, said that they might consider the testimony for the purpose alone as bearing upon the feeling of the defendant towards Mr. Boyd and the deceased, Edgar Boyd, if it does bear upon that question, and his feeling towards him at the time of the killing of Boyd as bearing upon that question, and that they could not consider what occurred between them and the defendant prior to the killing of Boyd for any other purpose.

The appellant argued that all of this evidence was incompetent and thus prejudicial to him, and that its admission was error.

We do not regard this evidence, allowed by the court to be introduced for the purpose of showing the

state of feeling between the parties and motive, was prejudicial, at least when the jury was admonished by the court that it could only be considered by them for such purpose alone. The trial court, when so ruling, did not err to the prejudice of appellant, but we are of the opinion correctly ruled. Winkler v. Commonwealth, 229 Ky. 708, 17 S. W. (2d) 999. Evidence of previous difficulties is competent for the purpose of showing motive. Cook v. Commonwealth, 232 Ky. 613, 24 S. W. (2d) 269.

In the case of Newton v. Commonwealth, 102 S. W. 264, 266, 31 Ky. Law Rep. 327, this court said:

"Threats, though uncommunicated, may be admitted to prove the ill feeling of the person making them toward the person threatened, or, where the matter is in issue, to show who began a conflict resulting in homicide." Also see Marshall v. Glover, 190 Ky. 113, 226 S. W. 398.

The final complaint (3) of appellant is twofold: First, that the court erred in dismissing appellant's motion to set aside the swearing of the jury; and, second, as to the following statement made by the prosecuting attorney.

As to the first objection, it is sufficient, we conclude, without discussion of the motion to here say, that same is without merit and for the reason that the motion was in effect a challenge to the panel of the jury, which, under section 281 of the Criminal Code of Practice, is not subject to exception and further was trivial for the reason that this jury was chosen and accepted by the parties upon the preceding day to try this same offense, and thus no substantial rights of the appellant from his mere deferring of trial were prejudiced by this ruling of the court.

As to the second objection, appellant contends that these statements made by the prosecuting attorney during the argument of the case to the jury were of such improper and inflammatory nature that he was entitled to have the swearing of the jury set aside.

With this view we do not concur. It was in evidence that the appellant had had serious trouble with his son over the Hamilton woman and also with his wife, as to which Boyd had spoken to the appellant, with the result

of incurring his animosity, and also there is evidence that the appellant had been in prison with this fallen woman, Nina Hamilton, referred to by commonwealth's attorney as "concubine," upon a charge against them of fornication, and further it was in evidence that the appellant had taken his shotgun and shot down the 17-year-old boy, the deceased, Edgar Boyd, on the night of October 3, such tragic killing being the same offense for which appellant was here being tried. The complaint made herein concerning such statements made by the commonwealth's attorney at the conclusion of his argument is less meritorious than that made in the case of McHargue v. Commonwealth, 239 Ky. 23, 38 S. W. (2d) 927, 930, wherein counsel for the appellant brought before this court for review practically all the cases wherein it had condemned the argument of attorneys representing the commonwealth, and where, after due consideration of them, the court said:

"An analysis of these cases is unnecessary. The court has always diligently sought to allow the attorney for the commonwealth such latitude as would enable him to fairly present the evidence and all reasonable deductions therefrom, and, at the same time, prevent his going out of the record or indulging in inferences not reasonably deducible from the evidence and circumstances disclosed to the jury. The statement of the attorney representing the commonwealth amounted to no more than a statement of the inference which counsel thought he could deduce from the evidence."

After a careful review and reading of the entire record and a full consideration of the arguments and objections made thereto, that errors prejudicial to appellant's substantial rights occurred therein, we are of the opinion that his claim in this is without merit and cannot be sustained, as we find no prejudicial error upon our examination of the record which would justify a reversal of the judgment.

Judgment affirmed.