## Johnson v. Commonwealth.

(Decided Oct. 4, 1932.)

JOHN W. CAUDILL and H. H. SMITH for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

We have another tragedy from Troublesome creek. Lee Johnson appeals from a twenty-one year sentence for killing Tom Lucas, deputy sheriff of Knott county, on a Sunday in November, 1930.

Lucas and another deputy sheriff, Isom Slone, had arrested Lark Huff and Merlin Triplett for public drunkenness and had taken them to the home of the police judge of the village of Pippapass. While they were there, Lee Johnson, Garlie Triplett, and three or four companions, whose ages ranged from sixteen to nineteen years, passed, and, according to the evidence of the commonwealth, were boisterous and under the influence of liquor. They had received information of the arrest of the two young men, and there is evidence tending to show their resentment of the arrest and a purpose to interfere with the officers. It is not clear whether one of this group or one of the two under arrest called to the other first. But Slone called to Johnson that he wanted to see him, and as he approached the gate to the residence, the other boys came along with him. Slone invited Johnson to sit down on a nearby log, and as they went toward it Johnson took a pistol from his pocket and carried it in his hand. Slone grabbed Johnson's pistol, and while scuffling over it another one of the boys joined in an effort to obtain its possession. While this was going on, Lucas approached from the house and said, "Lee I have got a warrant for you." He had nothing in his hands, but as he reached toward his inside coat pocket, where it is shown he was carrying his papers, Johnson obtained possession of the pistol and deliberately shot Lucas three times, inflicting almost instant death. It is shown that Lucas had in his possession a warrant for Johnson charging him with the offense of public drunkenness. There is evidence also that Johnson and his companions were committing a similar offense in the presence of the officers at the time of the homicide.

The defense proved that Johnson and his companions were sober and had drunk nothing intoxicating during the day. They had encountered Huff and Merlin Triplett while they were drunk and had deliberately avoided them by hiding in a barn up the creek for about an hour. They heard of the subsequent arrest of the two boys, but had no purpose to interfere in any way and were proceeding toward the home of Johnson's father when they passed through Pippapass. One of the two boys under arrest called from the porch to them in a joking way and they responded in like manner. After they had passed thirty or forty yards beyond the home of the police judge, Slone, whom they

did not know was an officer, called to Johnson, and as they walked away from the others, Slone asked him if he had any whisky, and when told he did not, then asked him about trading pistols. As Johnson was exhibiting the weapon he had (which he was returning to his father to whom it belonged), he saw Lucas coming towards them. Knowing him to be an officer, he started to put the pistol in his pocket to conceal it when Slone seized it, and then one of his friends endeavored to obtain its possession in order to prevent its use. According to the defendant and his witness, Lucas approached with a pistol drawn on Johnson and said nothing about making an arrest or having a warrant. Fearing for his life, Johnson says he shot and killed him.

There is no merit in the contention that the verdict is flagrantly against the evidence. Nor do we regard the remarks of the commonwealth's attorney in the closing argument as prejudicial, even treating them as if appellant's right to a review were properly preserved in the record.

Complaint is made of the self-defense instruction because it contained the phrase "that there was no other safe means, or to the defendant, Lee Johnson, there was no other apparent safe means of avoiding or warding off such danger or such apparent danger except to shoot," etc. The identical language was approved in Hall v. Commonwealth, 242 Ky. 717, 47 S. W. (2d) 538, and cases cited therein.

An instruction was given defining the powers of an officer to make an arrest for an offense committed in his presence and under a warrant and denying the right of defense to the accused of himself or his companions, if the jury should believe in effect that at the time he was killed Lucas was undertaking to discharge his duties as such officer and met with forcible resistance.

Criticism is made of this instruction on the ground that there was no evidence that the defendant or his associates brought about the difficulty or committed an offense in the presence of the officer or resisted their arrest. A recitation of the evidence—e x t r e m e l y abridged as it is—indicates that there was ample proof to justify the instruction. It is argued also that the instruction is erroneous in that it declared the de-

ceased had the right to serve the warrant on that day. Without explicitly deciding whether it was error to incorporate in the instruction the power of the officer to serve a warrant of arrest for public drunkenness on Sunday (see section 4567, Statutes), and the concomitant duty of the accused to submit, or that the criticism of other language of the instruction with respect to the forcible resistance is well taken, but conceding the instruction to have been technically improper in those respects, the court has reached the conclusion that as a whole the instruction was not prejudicial. The defendant did not claim in his evidence that he sought to prevent his illegal arrest. Nor is there any evidence that he killed Lucas in defense of any of his companions. His claim was altogether self-defense. The evidence, we think, would have justified a qualification of the instruction on the defense of himself and companions based on the theory that he and they brought on the difficulty independent of the official acts of the deceased. That was not given. To that extent and by the inclusion of the right to defend his companions, the appellant secured an advantage.

We are convinced that the verdict was not influenced by any technical error in the instruction. The facts were not complicated so far as the appellant's participation was concerned. The case resolved itself in its material aspects as to whether the jury believed the evidence adduced by the commonwealth or that of the defendant.

We are authorized by the Statutes to reverse a judgment of conviction only when from a consideration of the whole case we are satisfied that the substantial rights of the defendant have been prejudiced thereby. Criminal Code of Practice, secs. 340, 341; Rutherford v. Commonwealth, 78 Ky. 639; Metcalfe v. Commonwealth, 86 S. W. 534, 27 Ky. Law Rep. 704; Little v. Commonwealth, 91 S. W. 1131, 29 Ky. Law Rep. 41; Donehy & Prather v. Commonwealth, 170 Ky. 474, 186 S. W. 161, 3 A. L. R. 1161.

Wherefore, the judgment is affirmed.